Joseph TARLTON, Plaintiff,

v.

CUMBERLAND COUNTY COR-
RECTIONAL FACILITY, et
al., Defendants.

Civil No. 98–4478(JAP).

United States District Court,
D. New Jersey,
Camden Vicinage.

April 4, 2000.

Elissa S. Vessal, Thomas Bruno, II, Abramson & Denenberg, P.C., Cherry Hill, NJ, for Joseph Tarlton.

Stephen D. Holtzman, Vanessa P. Patrizi, Lally, Holtzman, Gilligan & Quasti, P.C., Linwood, NJ, for Correctional Medical Services, Inc., Mark Lachley, and James Neal, M.D.

## OPINION

KUGLER, United States Magistrate Judge.

This matter arises from a simple discovery dispute regarding the defendants' production of documents. The parties have spent a total of more than seventy-five pages briefing this particular dispute, the majority of which contain inflammatory accusations of misconduct and disparaging personal remarks against the opposing lawyers. This type of litigation exercise, for which both parties are at fault, is wholly unprofessional, contrary to the Guidelines for Litigation Conduct adopted by this court (*see* Local Civ. R. 103.1), and a complete waste of the court's time. For that reason, the parties are hereby instructed that any briefs in support of future non-dispositive pretrial motions shall be limited to ten pages in length, except by leave of court, and shall be devoid of personal attacks and accusations.

This action was filed on September 28, 1998. Defendants produced the documents at issue, which are unquestionably relevant, over fifteen months later, after a significant number of depositions and other discovery had already been completed. Because the court finds that the defendants had an obligation to identify the documents at issue at

the outset of this litigation in their Rule 26(a) disclosures, and that their failure to do necessitated the very discovery delays and battles that Rule 26(a) was specifically designed to prevent, the court will grant plaintiffs' motion for sanctions and deny defendants' cross-motion for sanctions.

## I. FACTUAL and PROCEDURAL BACKGROUND

Plaintiff Joseph Tarlton filed this action against Bayside State Prison and other prisons, along with various prison officials, claiming that defendants violated his constitutional rights during the time that he was incarcerated. According to the Third Amended Complaint, defendant Correctional Medical Services, Inc. ("CMS") allegedly was a healthcare provider for Bayside State Prison, and defendants Mark Lashley and James Neal, M.D., were employees and/or agents of CMS or Bayside State Prison. Plaintiff asserts that defendant Dr. Neal is the statewide medical director for CMS with approval authority over medical treatment for prisoners within the state of New Jersey, including Joseph Tarlton during the events giving rise to this action. With respect to these defendants [collectively referred to as "the CMS defendants"], plaintiff claims, *inter alia,* that they were deliberately indifferent to his serious medical needs while he was incarcerated at Bayside State Prison.

The nature of discovery disputes brought to the court's attention by way of telephone conference call and motion indicate that the pretrial process has been somewhat acrimonious. This particular dispute involves the production of documents by the CMS defendants. According to plaintiff's motion for sanctions, the CMS defendants did not produce Rule 26(a) disclosures. Plaintiff moved to compel these disclosures, and, in response, defendants answered interrogatories and document requests that plaintiff had served three months before. Included within those requests had been a request for all medical documentation regarding plaintiff Joseph Tarlton. A telephone conference call was held with this court. Based upon the CMS defendants' representation that they had produced all the information that they had, and upon their agreement to provide certain other documents, the plaintiff's motion to compel was denied. (*See* Order 3/2/99).

At some point after that, plaintiff's counsel learned that medical consultation requests and recommendations were often noted on form cover sheets that accompanied prisoners' medical records. According to plaintiff, while the CMS defendants had produced medical records relevant to Joseph Tarlton, they had not included any cover sheets along with those records.

During the deposition of defendant Dr. James Neal, he identified the cover sheets as "a form that we use for internal tracking of consults." (Neal Dep. at 63, Pl.Ex. "D"). He stated that his office did not have a policy to retain the cover sheets from 1996 through 1998, but the information from the cover sheets was input into the computer and included in a data base reflecting the medical record of each patient. (*Id.,* at 63–66). He stated that the cover sheets were faxed back to the individual sites and that he had no knowledge of what the individuals at each site did with the cover sheets. (*Id.*). Plaintiff requested these cover sheets be produced at the continuation of Dr. Neal's deposition, and the parties agreed that the production of the cover sheets would be limited to those involving Joseph Tarlton. According to plaintiff, defendants instead produced a computer print-out of medical information relating to Joseph Tarlton.

Plaintiff soon thereafter deposed defendant Mark Lashley, who was the Director of Administrative Services for CMS. Mr. Lashley also testified that CMS did not routinely maintain the cover sheets. (Lashley Dep., at 25–26, Pl.Ex. "G").

Plaintiff then conducted the depositions of two former CMS employees, Kristen Powell and Robert Galloway, who were scheduling and filing clerks with CMS during the relevant time period. Ms. Powell testified that she filed the cover sheets and consult forms, once they had been completed by Dr. Neal, in filing cabinets in the CMS offices. (Powell Dep., at 52–53, Pl.Ex. "H"). Mr. Galloway testified that completed cover sheets were filed in archived boxes for years other than the current year, and that the documents were alphabetized by inmate name and the

boxes labeled by year. (Galloway Dep., at 88–90, Pl.Ex. "I").

Following this testimony, plaintiff's counsel sought access to the storage boxes at the CMS facility and again asked for the court's assistance. In response, defense counsel produced three previously unproduced cover sheets and represented to the court that "that the fax cover sheets which have been retained have been presented to [plaintiff's counsel]." (Pl.Ex. "M"). Defense counsel further objected to plaintiff's counsel request to examine the storage boxes at the CMS facility and noted that the "consultation cover sheets are stored in boxes containing hundreds of additional patient information for other patients and, therefore, it would be a violation of patient confidentiality to allow such an inspection." (*Id.*). Defense counsel assured plaintiff's counsel and the court that his firm had conducted an exhaustive search of the boxes and had produced the only three cover sheets that they had found. (*Id.*).

By order of the court, defendants were instructed to allow plaintiff access to the storage boxes: "Plaintiff's counsel is granted leave to personally inspect the 16 or so boxes of documents at defendant's premises to attempt to locate any other fax cover sheet or records concerning the plaintiff, keeping confidential any records not relating to the plaintiff." (*See* Order dated 11/19/99).

In purported compliance with this court order, defense counsel had 23 storage boxes transferred to their law office in Cherry Hill for plaintiff's counsel to review. Plaintiff's counsel claims that the storage boxes were alphabetized and grouped by years—just as the former CMS employees had testified—and that she located several cover sheets that defendants had not produced. (Pl.Ex. "P"). Noting that the cover sheets appeared to be photocopies, plaintiff's counsel was informed that the originals were in the possession of defense counsel at another office. Several weeks later, the originals were produced to plaintiff's counsel on January 11, 2000. Contained within the packet of original cover sheets that were produced was an additional cover sheet, signed by Dr. Neal on a date very close to plaintiff's injury, that had not been previously produced and that had not been in the storage boxes. Plaintiff claims that counsel's removal of these original cover

sheets from the storage boxes was improper, and she further alleges that the documents that were produced were altered by the redaction of various margin and sticky note notations that she found on the originals.

Plaintiff argues that the CMS defendants violated their obligations under Fed.R.Civ.P. 26(a) by failing to identify the consultation cover sheets, misrepresenting that CMS did not routinely retain the cover sheets, producing several cover sheets in a piecemeal fashion while misrepresenting both to counsel and the court that defendants had produced all responsive documents, concealing the existence of the cover sheets, withholding the originals and allegedly altering some of the photocopies, and refusing to produce all of the cover sheets until plaintiffs' counsel learned of them through depositions and made repeated entreaties to the court to gain access to them.

Plaintiff also claims that defendants Neal and Lashley conspired with defense counsel to deceive plaintiff about the existence and retention of the cover sheets and that they lied under oath. Plaintiff asks the court to impose sanctions for defendants' discovery violations, in the form of: (1) expenses and fees incurred in deposing the two former CMS employees and traveling to defense counsel's office to look through the storage boxes, as well as the fees and costs incurred in moving for sanctions; (2) a requirement that defendants produce any other responsive documents that have not been produced; (3) a requirement that defendants Neal and Lashley review their sworn testimony and correct any misstatements, along with an affidavit of compliance with the court; (4) sanctions against defendants Neal and Lashley for perjury; and (5) a "deterrent penalty" of $25,000.00.

Defendants not only oppose plaintiff's motion for sanctions, but they have cross-moved for sanctions pursuant to Fed. R.Civ.P. 11. Notably, there are several key facts asserted by plaintiff that defendants do not dispute. They do not dispute that they failed to provide Rule 26(a) disclosures. They do not dispute that they repeatedly represented to the court that they had produced all of the relevant consultation cover sheets that they had. They do not dispute that several unproduced cover sheets were

found in the archived storage boxes. They do not dispute that these cover sheets are relevant to plaintiff's claims and responsive to plaintiff's repeated requests. Finally, they do not dispute that at all relevant times the consultation cover sheets had been filed in archived storage boxes at CMS premises, alphabetized and marked by year.

What they claim is that they have fully complied with all of plaintiff's discovery requests and court orders and that they have not hidden or concealed any documents. According to defendants, although there was a delay in producing the documents, plaintiffs now have all of the requested documents, and so there can be "no harm, no foul." (Def. Br., at 14). They contend that the delay was "simply a result of trying to locate and obtain the information from persons who had first hand and direct information as to the cover sheet maintenance process and who were no longer employed by CMS," and that "defendants simply did not have the knowledge or information concerning the maintenance of the fax cover sheets" until the two former CMS employees were deposed. (*Id.*, at 8).

They claim that after plaintiff's counsel requested the consultation cover sheets following Dr. Neal's deposition, "a search was performed by CMS employees," and the computer print-out was produced. (Def. Brief, at 9 n. 2). After the deposition of Robert Galloway, an "additional search was thereafter performed by defense counsel and three more cover sheets were produced." (*Id.*). "As information as to the storage and maintenance of the consultation cover sheets became available, additional searches for the documents were performed and the documents were produced to plaintiff's counsel." (*Id.*).

With respect to the allegedly perjured testimony of defendants Neal and Lashley, defendants claim that Neal and Lashley testified truthfully within their knowledge, however limited, of whether CMS retained the cover sheets.

In support of their cross-motion for Rule 11 sanctions, defendants argue that plaintiff's counsel has filed a frivolous motion for sanctions, charging defendants with deceit, concealment, lack of candor and perjury, none of which is supported by any evidence.

## II. *RULE 26(a)*

Rule 26(a) obligations are clear and established in this District. With respect to documents relevant to the action, the rule provides as follows:

(1) **Initial Disclosures.** Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to other parties:

\* \* \*

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings;

Fed.R.Civ.P. 26(a). While some courts chose to opt-out of certain provisions of the 1993 amendments to Rule 26, this court adopted the new Rule 26(a) in its entirety. *See* Local Civil Rule 26.1(b) ("The requirements currently codified in Fed.R.Civ.P. 26(a) and (f) pertaining to required disclosures, meetings of parties, and submission of discovery plans, shall apply to all civil cases filed after December 1, 1993 . . ."). This District chose to follow Rule 26(a), rather than craft a customized local version, "because it concluded that the federal civil rules generally provided a workable balance between flexibility allowed to the bar and control centered in the Court, particularly through the United States Magistrate Judge." *Id.*, comment.

The voluntary disclosure provision of Rule 26(a) that was amended in response to the Civil Justice Reform Act of 1990 was a dramatic and unprecedented shift in federal discovery practice—a shift that was necessitated by the progressively increasing undue time and expense spent on obtaining undisputedly relevant discovery, which was a waste of the litigants' time, as well as that of the court in enforcing the federal discovery rules against recalcitrant parties.[1] This District does not take compliance with Rule

---

1. *See* Issues and Changes Regarding Proposed Amendments to Federal Rules of Civil Procedure, May 1, 1992, Committee on Rules of Practice and Procedure of the Judicial Conference of the

United States, 146 F.R.D. 401, 527, 628–29; *see also* Local Civil Rule 26.1, comment (stating that the 1993 amendments were "intended to achieve

26(a) lightly. *See* Local Civil Rule 26.1, comment. The purpose of voluntary disclosures is to streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs. They also serve the purpose of preventing a party from improperly withholding relevant documents on the grounds that the opposing party has not specifically asked for them. The federal discovery rules, Fed.R.Civ.P. 26 through 37, in conjunction with Fed.R.Civ.P. 16 governing a court's authority to manage a case through status conferences and scheduling orders, were carefully designed to structure the pretrial process in a way to move a case or controversy to resolution on the merits in the fairest and most efficient way possible. A party's attempt to circumvent this process in the name of litigation strategy does a serious disservice to this system and will be met with the imposition of sanctions, as provided for in the rules.

Litigants are warned not to "indulge in gamesmanship with respect to the disclosure obligations." Advisory Committee Notes, Rule 26(a). To curb such gamesmanship, Rule 37(c)(1) provides the court with broad latitude in fashioning an appropriate sanction for failure to provide the information required under Rule 26(a):

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these

sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

Fed.R.Civ.P. 37(c)(1). This provision is self-executing; there is no need for a litigant to make a motion to compel. Advisory Committee Notes, Fed.R.Civ.P. 37(c). Nor does the imposition of a sanction under this provision require a violation of a court order as a prerequisite.

The automatic enforcement power of Rule 37(c)(1) has been well documented since its revision in 1993. *See, e.g., Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'"); *Vance v. United States of America,* 182 F.3d 920 (6th Cir.1999) ("It is well-established that Fed.R.Civ.P. 37(c)(1), enacted in 1993, mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified."); *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 and n. 6 (7th Cir.1998) (holding that Rule 37(c)(1) provides enforcement mechanism for violations of Rule 26(a) and that "the district court is not required to fire a warning shot"); *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998) ("[T]he new rule [37(c)(1)] clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.").

The sanctions available under Rule 37(c)(1) include payment of reasonable expenses, including attorney's fees, and "other appropriate sanctions." They also include those are those set forth in subparagraphs (A), (B) and (C) of subdivision (b)(2).[2]

---

the [Civil Justice Reform Act's] goal of reducing cost and delay particularly in response to what has been perceived as abuses of the discovery process").

**2.** These subsections provide:

    (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

    (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

    (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; ...

With these rules in mind, the court makes the following findings. The consultation cover sheets are undeniably relevant to plaintiffs' claims. Medical documentation, of any kind, regarding plaintiff Joseph Tarlton's treatment while he was incarcerated is at the heart of his claims of deliberate indifference against the CMS defendants. The CMS defendants were required by Rule 26(a) to identify these documents over one year ago, which they failed to do. They also were required by Rule 26(b)(5) and Local Civil Rules 33.1 and 34.1 to produce a detailed privilege log for any relevant documents that they were withholding on the basis of privilege, which they failed to do.

It is not an excuse that defense counsel did not know about the retention of the cover sheets. Counsel had a duty to explain to their client what types of information would be relevant and responsive to discovery requests and ask how and where relevant documents may be maintained. The client is charged with knowledge of what documents it possesses. It was not their option to simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that was all they had. Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents.[3]

Indeed, defendants' discovery strategy would force the plaintiff into the very fishing expedition type of discovery that Rule 26(a) was designed to prevent.

Defendants have not provided "substantial justification" for their failure to identify relevant documents. They blame their delay on their own lack of knowledge and the fragmented information that was being pieced together by plaintiff—factors which the court has just explained do not constitute justification. They also claim that they initially objected to access to the storage boxes because of concerns of confidentiality. These concerns, however, were required to be affirmatively raised by defendants in a properly submitted privilege log at the beginning of the discovery process. Their reactionary invocation of privilege and confidentiality falls far short of their minimal obligations under Rule 26.

Defendants further claim that at this point they have answered all of plaintiff's discovery requests, and even though there was a delay in producing the cover sheets, now that plaintiff has them, there can be "no harm, no foul." Defendants are sadly mistaken. Their discovery violations are not harmless. Plaintiff has been prejudiced by being forced to spend months learning about the existence, significance, and whereabouts of the cover sheets and repeatedly seeking the court's assistance. That prejudice also extends to the court, for defendants' failure to identify relevant documents has hindered the efficient management of the pretrial process with which the court is charged under Rule 16 and has delayed a resolution of this action on its merits.

Defendants' failure to comply with Rule 26(a), along with the resulting prejudice, warrants a sanction.[4] The court finds that an appropriate sanction is to require defendants to pay plaintiff's reasonable expenses, including attorney's fees, of deposing the two former CMS employees, and of making this motion for sanctions.[5] Had defendants prop-

---

Fed.R.Civ.P. 37(b)(2).

**3.** The fact that Powell and Galloway were *former* CMS employees does not relieve CMS of its obligation to know where its own documents are kept. Defense counsel's suggestion that they were in the same position with regard to knowledge of the cover sheets as plaintiff until the two former CMS employees could be identified and subjected to depositions completely misses the point. It also is belied by the undisputed fact that CMS itself produced Powell and Galloway for their depositions.

**4.** This court refuses to entertain an inquiry about whether defendants Neal and Lashley lied under oath and about whether defense counsel altered discovery documents. Such scandalous accusations are not to be made or taken lightly and are, in any event, unnecessary and irrelevant to the questions at hand. Accordingly, the court denies plaintiff's requests for sanctions against defendants Neal and Lashley for perjury and for a $25,000 "deterrent penalty."

**5.** The court will not impose fees for plaintiff's counsel's trip to examine the boxes of CMS files, because they more than likely would have incurred such costs anyway had defendants properly identified the documents.

erly identified the cover sheets, the depositions of Powell and Galloway would have been unnecessary, as would have been this motion for sanctions.

■ Plaintiff's counsel claims that her hourly rate is $250; that she spent 15 hours preparing for and conducting the depositions of the former CMS employees; that she spent $585.90 for court reporter fees for these two depositions; and that she spent 6 hours preparing the instant motion for sanctions. The court finds that both counsel's hourly rate of $250.00 and the number of hours claimed for these activities is reasonable. Thus, in accordance with Fed.R.Civ.P. 37(c)(1), the court will impose sanctions of $5,835.90.

Defendants also will be required to produce any and all relevant consultation cover sheets in their possession, custody, or control, or represent to plaintiffs in affidavit form that they have produced all the relevant cover sheets that CMS possesses.

With respect to defendants' cross-motion for sanctions, the court finds that plaintiff's sanctions motion is neither frivolous nor unsupported. Findings justifying the imposition of sanctions were based upon properly submitted documentary evidence and facts asserted by plaintiff that were not disputed by defendants. Thus, defendant's cross-motion will be denied.