Angelo **CATALDO**, Plaintiff,

v.

Sybil **MOSES**, et al., Defendants.

No. CIV.A. 02–2588FSH.

United States District Court,
D. New Jersey.

Nov. 3, 2004.

Mandy R. Steele, East Brunswick, NJ, Robert G. Leonard, Leonard & Butler, Morristown, NJ, for Plaintiff.

Meryl G. Nadler, Office of the NJ Attorney General, Trenton, NJ, for Defendants.

## *OPINION*

HOCHBERG, District Judge.

### INTRODUCTION

This matter comes before the Court upon: (1) Plaintiff's appeal of Magistrate Judge Shwartz's May 7, 2004 Order denying the reopening of discovery ("Discovery Order"); (2) the parties' objections to Magistrate Judge Shwartz's May 7, 2004 Report and Recommendation which granted Summary Judgment in favor of Defendants on Plaintiff's federal claims and declined to exercise supplemental jurisdiction over Plaintiff's remaining state claims ("Summary Judgment Report and Recommendation"); and (3) Plaintiff's Fed. R.Civ.P. 54(b) motion requesting that this Court vacate its March 31, 2004 Order adopting Magistrate Judge Shwartz's March 8, 2004 Report and Recommendation that dismissed Plaintiff's New Jersey Tort Claims Act claims for failure to meet statutory notice requirements ("Dismissal Report and Recommendation").

This case arises from plaintiff Angelo Cataldo's termination from his position as

the Civil Division Manager for the Superior Court of New Jersey, Bergen Vicinage, on May 24, 2002. The Defendants include the Honorable Sybil Moses, Assignment Judge of the Superior Court, and numerous court employees. Magistrate Judge Shwartz was requested to prepare Reports and Recommendations for this Court because of her extensive interaction and familiarity with the case through discovery. As Judge Shwartz's Summary Judgment Report and Recommendation details the lengthy fact background of this case, this Court does not repeat the background here. However, facts relevant to this Court's legal analysis are integrated into this opinion.

Magistrate Judge Shwartz has managed discovery and other pre-trial litigation in this case, which has been before her often during the over two years of vigorous and somewhat acrimonious litigation that has required thousands of pages of document analysis.

This Court has reviewed Judge Shwartz's Summary Judgment Report and Recommendation, her Dismissal Report and Recommendation, and all submissions made by the parties pursuant to Fed. R.Civ.P. 78.

## DISCUSSION

### I. Plaintiff's Appeal of the May 7, 2004 Discovery Order Denying Reopening of Discovery

This court first considers Plaintiff's appeal of Magistrate Judge Shwartz's May 7, 2004 Discovery Order which denied Plaintiff's March 17th, 2004 application to reopen discovery.

#### A. Background

In her May 7, 2004 Discovery Order, Judge Shwartz denied Plaintiff's March 17, 2004 application to reopen discovery and the summary judgment record. The request by Plaintiffs to reopen discovery was submitted five months after the 14–month discovery period had closed. In support of his application to reopen discovery, Plaintiff offered seven new certifications intended to contradict the reports written by Ms. Laura Simoldoni, the Equal Employment Officer of Plaintiff's workplace, that concluded that Plaintiff had violated employee workplace guidelines. Plaintiff's seven certifications were submitted at various times, including well after his application was submitted, from the following people: Sandra Palermo dated March 2, 2004, Rita Robins dated March 10, 2004, Amelia Teo dated March 17, 2004, Amy Leon dated March 19, 2004, Athanasios (Tom) Antonopoulos dated March 22, 2004, Lucy Hernandez dated March 25, 2004, and Eileen Davis dated April 8, 2004.

Plaintiff's appeal of Judge Shwartz's denial of the motion to reopen discovery contained no brief of arguments on appeal. Rather, Plaintiff submitted a several hundred page attachment which enunciated no reasons as to why the Magistrate Judge's ruling was clearly erroneous or contrary to law. The attachment included, *inter alia,* deposition transcripts, the original briefs to Judge Shwartz, and the certifications Plaintiff sought to admit.

#### B. Standard for Reviewing Non–Dispositive Orders

The Magistrates Act requires this Court to apply the clearly erroneous standard of review upon appeal of the magistrate judge's report on certain pretrial, non-dispositive motions. 28 U.S.C. § 636(b); *see also McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981). A magistrate judge's ruling concerning discovery is considered such a non-dispositive motion. *See, e.g., Bowen v. Parking Authority,* 214 F.R.D. 188 (D.N.J.2003); *Tarlton v. Cumberland County Corr. Facility,* 192 F.R.D. 165 (D.N.J.2000); *Fitz Inc. v. Ralph Wilson Plastics Co.,* 184

F.R.D. 532 (D.N.J.1999). Thus, a magistrate judge's adjudication of a non-dispositive motion will be set aside only if the order is found to be clearly erroneous or contrary to law. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1111, 1113 (3d Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (*citing* 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R.Civ.P. 72(a); L. Civ. R. 72.1(c). A magistrate judge's order is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co. of Wis.*, 131 F.R.D. 63, 65 (D.N.J.1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). To be contrary to law, a magistrate judge's order must have "misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F.Supp.2d 162, 164 (D.N.J.1998).

### C. Analysis

■ In denying Plaintiff's application to reopen discovery, Judge Shwartz applied the three-pronged test set forth in *Krouse v. Am. Sterilizer Co.*, 984 F.Supp. 891, 915 (W.D.Pa.1996) (citing *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511 (3d Cir.1994)), which held that to reopen discovery a party must satisfy all of the following: 1) identify the particular information sought; 2) show how the information would preclude summary judgment; and 3) explain why it was not previously obtained. Applying the *Krouse* test, Judge Shwartz found that Plaintiff had met the first prong of the test by identifying the particular information sought, but Plaintiff failed to show how the information would preclude

summary judgment and failed to explain why the information was not obtained during the fourteen-month discovery period. Mag. J. Order, May 7, 2004, *citing* Mag. J. Rep. & Rec., May 7, 2004 Rep. & Rec., 11–14, n. 10.

The record indicates that Plaintiff had ample opportunity, time, and resources to conduct extensive discovery and to develop his facts, and he has provided no explanation as to why he could not previously submit the documents that he now seeks to admit. Completion of discovery was scheduled originally for June 1, 2003, but was extended by over five months until November 7, 2003. During the fourteen-month discovery period, the Plaintiff had opportunity to (and did) depose numerous individuals, including Defendants Moses, Goodman, Simoldoni, DeLaFuente, Buckles, Stylianou, Minihan, Tinghio, Gibson (formerly McMahon), and third-party witnesses Mary Demmer and Lynn O'Dell. Plaintiff submitted thousands of pages of these deposition transcripts to the Court. Plaintiff and Defendants also exchanged many documents, responses to interrogatories, and expert reports with supplemental answers. Many discovery disputes arose and were argued before Judge Shwartz and further resolved before this Court.

Plaintiff has also failed to show that admittance of his submission would preclude summary judgment. He submitted no brief with legal analysis. His request to reopen discovery rested simply on general assertions and vague inferences, sometimes in attached cover letters, that the new certifications would somehow prove that Equal Employment Officer Simoldoni's reports about the Plaintiff were flawed.[1]

Judge Shwartz correctly applied the *Krouse* test in denying the application to

---

**1.** Plaintiff conceded that these new certifications would have no bearing on his property

or contract claims.

reopen discovery. Her ruling is not "clearly erroneous" and is affirmed. Plaintiff's new certifications are not made part of the factual record for purposes of litigating Defendant's summary judgment motion.

## II. Parties' Objections to the Summary Judgment Report and Recommendation

This Court next considers the parties' six objections to Judge Shwartz's Summary Judgment Report and Recommendation.

### A. Background

In her Summary Judgment Report and Recommendation, Judge Shwartz recommended that the Defendants' motion for summary judgment as to Plaintiff's 42 U.S.C. §§ 1983, 1985 and 1986 claims (Counts I–IV) and breach of contract claims (Count VI) be granted, and that Plaintiff's remaining claims under the New Jersey Law Against Discrimination ("NJ LAD") (Counts V, IX,[2] and XII) be dismissed for lack of subject matter jurisdiction.[3]

Plaintiff objected that Judge Shwartz made the following five errors: (1) failing to consider all the disputed facts of this case; (2) holding that the *Sea Clammers* doctrine preempted Plaintiff's § 1983 age discrimination claim; (3) holding that Plaintiff's speech did not constitute a matter of public concern; (4) holding as an independent ground that Plaintiff's equal protection claim failed on the pleadings (in footnote 27) after having recommended

summary judgment against Plaintiff's equal protection claim due to lack of evidence; and (5) finding that Plaintiff had not invoked Equal Employment Office (EEO) anti-discrimination procedures despite the alleged invocation being a basis of Plaintiff's "class of one" equal protection claim.

Defendants objected only to the portion of the Report and Recommendation that this Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and to dismiss the same pursuant to 28 U.S.C. § 1367(a).[4]

Neither party objected to Judge Shwartz's five conclusions that Plaintiff: (1) did not have a property interest in his employment; (2) was not deprived of a liberty interest in obtaining future employment; (3) was not deprived of equal protection based on gender; (4) had no basis for his §§ 1985 and 1986 claims; and (5) did not have a valid breach of contract claim. These conclusions are thus adopted as unobjected and because they are correct. *See, e.g., Nyhuis v. Reno,* 204 F.3d 65, 68 (3d Cir.2000); *McCune v. Grace,* 2004 WL 2316598, at *1 (E.D.Pa. Oct. 12, 2004).

### B. Standard

■ The Magistrates Act, 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), as implemented in L. Civ. R. 72.1(c)(2), provides that a *de novo* standard of review should by used by the district court when considering a magistrate judge's report and recommendation and subsequent objections by the parties. L. Civ. R. 72.1(c)(2); *see also State Farm Indemnity v. Fornaro,*

---

**2.** Although Count IX is not explicitly mentioned in the Summary Judgment Report and Recommendation, it is a retaliation claim also based on New Jersey law.

**3.** Plaintiff's other claims (Counts VII, VIII, X, and XI) of his 12–count complaint were previously dismissed and are discussed in Part III

of this opinion in light of recently decided New Jersey law.

**4.** Plaintiff's 19–page brief responding to this objection by the Defendant will not be entertained. Plaintiff's submitted this brief on May 27, 2004 without seeking leave of Court.

227 F.Supp.2d 229 (D.N.J.2002); *Povero-mo–Spring v. Exxon Co.*, 968 F.Supp. 219, 221 (D.N.J.1997). *De novo* review does not imply that an additional hearing is required, *United States v. Raddatz*, 447 U.S. 667, 674–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), but rather the court, at its discretion, may rely on the record developed by the magistrate judge, or it may conduct a new hearing, receive further evidence, recall witnesses, or send the matter back to the magistrate judge with additional instructions. L. Civ. R. 72.1(c)(2); *see also West Africa Trading & Shipping v. London Int'l.*, 968 F.Supp. 996, 998 (D.N.J.1997); *Bell v. United Princeton Props.*, 1988 WL 68927, at *1 (D.N.J. June 29, 1988).

### C. Analysis

This Court now considers all five of Plaintiff's objections to Judge Shwartz's recommendations to grant summary judgment (analyzed in points 1—5 below), and considers Defendant's objection to Judge Shwartz's recommendation to decline to exercise jurisdiction over the remaining three state law claims (analyzed in point 6 below).

### 1. Objection to Magistrate Judge's Alleged Failure to Consider all Disputed Facts

Plaintiff contends that Judge Shwartz erred by not considering all the disputed facts of the case in that she (a) did not reopen discovery to include new certifications and (b) did not consider the entire fact record established during discovery. The first issue has been decided because this Court has affirmed Judge Shwartz's denial of Plaintiff's application to reopen discovery (as discussed in Part I of this opinion). Thus, the new certifications are not within the factual record of this case and are not considered in this opinion's

summary judgment analysis that follows. *See Krouse*, 984 F.Supp. at 915–16.

Regarding Plaintiff's allegation that Judge Shwartz failed to consider the entire fact record, this Court finds the objection completely without merit. Plaintiff's statement of material facts submitted pursuant to Local Civil Rule 56.1 was a 106–page statement with 363 paragraphs of "undisputed material facts" plus a declaration that merely appended over 2,500 pages of deposition transcripts. Judge Shwartz reviewed the entire submission, but pointed out that Plaintiff violated the spirit of Rule 56.1 by submitting wholesale immaterial information. She stated:

> ... it appears [P]laintiff violated the spirit of Rule 56.1. Indeed, many of the paragraphs are not material and his wholesale submission of deposition transcripts contravenes the rule. Despite this violation, the Undersigned has carefully examined the entire record presented for its consideration.

Mag. J. Rep. & Rec., May 7, 2004, at 15, n. 11.

■ The purpose of a Rule 56.1 statement is "to narrow the issues before the District Court ...," *id.*, and "save this court from having to drudge through deposition transcripts ... to determine the facts." *See Comose v. New Jersey Transit Rail Operations, Inc.*, 2000 WL 33258658, at *1 (D.N.J. Oct.6, 2000). Thus, for the purpose of this summary judgment motion and Plaintiff's objections, and subsequent appeals, only the portions of the 2,566–page attachment to which Plaintiff *specifically* referenced in his statement of undisputed material facts shall be deemed admitted pursuant to Local Civil Rule 56.1; any portion *not specifically* referenced in Plaintiff's statement of undisputed material facts shall not be deemed part of the summary judgment record.[5]

---

5. In a similar vein, as previously discussed,

Plaintiff's appeal of Judge Shwartz's Discov-

### 2. Objection to Finding that Sea Clammers Doctrine Preempts Age Discrimination Claim under Section 1983

■ Judge Shwartz recommended the entry of summary judgment against Plaintiff's equal protection claim based on age because the Age Discrimination in Employment Act's (ADEA) comprehensive statutory scheme precludes Plaintiff from bringing suit under Section 1983, according to the *Sea Clammers* doctrine. She stated:

> [u]nlike gender discrimination, a federal claim for age discrimination cannot be pursued under the Equal Protection Clause but can only be addressed under the Age Discrimination in Employment Act (the "ADEA"). The ADEA provides a comprehensive statutory scheme to prohibit job related age discrimination, *see Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1364 (4th Cir. 1989), and was structured to facilitate and encourage compliance through an informal process of conciliation and mediation.

Mag. J. Rep. & Rec., May 7, 2004, at 39.[6] Judge Shwartz applied the *Sea Clammers* doctrine, which states that "when a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The *Sea Clammers* court concluded that due to existing detailed enforcement provisions, it was clear that Congress intended to supplant any remedy that would otherwise be available through the use of § 1983. *See id.*

Plaintiff argues that the Magistrate Judge misapplied the *Sea Clammers* doctrine. Citing *Sabree v. Richman*, 367 F.3d 180 (3d Cir.2004), Plaintiff asserts that the Third Circuit has recently adopted a narrow view of *Sea Clammers* under which Plaintiff is not be preempted from bringing his § 1983 age discrimination claim. Although *Sabree* cautioned that "a court should not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy," *Id.* at 193, *Sabree* nonetheless emphasized that the existence of a "comprehensive enforcement scheme," such as those in *Sea Clammers* and *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), would preclude individual actions under § 1983. *Id.* Thus, *Sabree* supports Judge Schwartz's application of *Sea Clammers*.

Judge Shwartz carefully analyzed *Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir. 1981) in reaching her conclusion. In *Purtill*, the Third Circuit provided an example of such a "comprehensive enforcement scheme" and specifically held that the ADEA preempts all other federal remedies for age discrimination against a federal employer. *Id.* at 138 (holding that the ADEA's "statutory remedial scheme pro-

---

ery Order consisted only of a paragraph-long "brief" without any specific supporting arguments, but simply directed this Court to an attachment containing hundreds of pages. The purpose of a brief is to bring arguments and proper legal standards to the Court's attention. Wholesale attachments will not suffice.

**6.** In order to show how ADEA promotes a mediation process, Judge Shwartz further pointed out that a plaintiff suing under the ADEA must give sixty-days notice to the Equal Employment Opportunity Commission (EEOC). 29 U.S.C. § 626(d). Such notice is a prerequisite to bringing a suit designed to give the EEOC time to mediate the grievance "by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). The right to commence a private action terminates upon the filing of an action by the EEOC. 29 U.S.C. § 626(c).

vides the plaintiff with complete and efficient remedies"); *see also Barlieb v. Kutztown Univ. of Pa. State System of Higher Educ.,* 2003 WL 22858575 (E.D.Pa. Dec. 1, 2003); *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364 (4th Cir.1989); *Migneault v. Peck,* 158 F.3d 1131 (10th Cir. 1998). The *Purtill* court found sufficient evidence that Congress intended that the ADEA provide a comprehensive enforcement scheme to be a substitute for other remedies. *Purtill,* 658 F.2d at 137. For example, in § 626(d) of the ADEA Congress outlined the method for filing a charge with the Equal Employment Opportunity Commission, and in § 626(f), Congress elaborately described how an individual may waive his or her rights under the statute.

Plaintiff contends, in a circular fashion, that even if the ADEA preempts § 1983 actions, an exception applies in his case because the Eleventh Amendment bars Plaintiff from suing the state under the ADEA, citing *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Judge Shwartz analyzed Plaintiff's argument as follows:

> *Kimel* involved state employees who brought ADEA claims against state defendants. 528 U.S. at 70–72, 120 S.Ct. 631. The issue before the Supreme Court was whether the ADEA abrogated the Eleventh Amendment, making states amenable to age discrimination claims under the ADEA. The Court found that Congress clearly intended that the ADEA abrogate the Eleventh Amendment, *id.* at 77, 120 S.Ct. 631, but that such abrogation exceeded Congress' authority under Section 5 of the Fourteenth Amendment, *id.* at 91, 120 S.Ct. 631. Accordingly, the Supreme Court held that the Eleventh Amendment barred state employees' ADEA claims against non-consenting states employers. *Kimel* anticipated the plaintiff's argument, however, noting that its holding

> "does not signal the end of the line for employees who find themselves subject to age discrimination at the hands of their state employers," because they "are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every state of the Union." *Id.* at 91, 120 S.Ct. 631 & n. (citing, *inter alia,* N.J.S.A. 10:3–1, 10:5–1 *et seq.*).

Mag. J. Rep. & Rec., May 7, 2004, at 39–40.

This Court agrees with Judge Shwartz's analysis of this issue. *Kimel* bars an ADEA claims against state employers, but *Kimel* does not imply that § 1983 claims may be brought against state employers as an end run around the comprehensive statutory scheme of the ADEA. The Supreme Court in *Kimel,* stated explicitly that such plaintiffs can pursue age discrimination claims under the NJ LAD. Accordingly, this Court finds that the ADEA provides a comprehensive enforcement scheme to preclude reliance on § 1983 as a remedy.

Finally, Plaintiff contends that even if he could have pursued age discrimination claims under the NJ LAD, he should have the availability of a federal forum to address his age discrimination claims, despite the Eleventh Amendment and *Purtil* bars. It is well settled, however, that there is no absolute right to adjudicate a claim in federal court. *Hoffman v. Goberman,* 420 F.2d 423, 428 (3d. Cir. 1970).

3. *Objection to Finding that Plaintiff's Speech was not a Matter of Public Concern*

Judge Shwartz recommended granting summary judgment against Plaintiff's First Amendment claim because Plaintiff failed to establish that: (1) he engaged in speech or an activity that relates to a matter of public concern; and (2)

the protected speech was a substantial or motivating factor in the public employer's alleged retaliatory action. See Mag. J. Rep. & Rec., May 7, 2004, at 32 (citing *Baldassare v. N.J.,* 250 F.3d 188, 194–95 (3d Cir.2001)).

Judge Shwartz detailed the legal standard for determining when speech is a matter of public concern as follows:

> For speech to be protected, it must involve a matter of public concern. *Azzaro v. County of Allegheny,* 110 F.3d 968, 976 (3d Cir.1997). Speech addresses a matter of public concern when it can be reasonably related to "any matter of political, social or other concern to the community," *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995), and it "attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Connick v. Myers,* 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Feldman v. Philadelphia Housing Auth.,* 43 F.3d 823, 829 (3d Cir.1994) (employee's auditing reports intended to highlight improprieties, disclose corruption, fraud, and illegality in a government agency was speech pertaining to matters of important public concern). This means that public speech cannot "constitute[ ] merely personal grievances." *Id.* (citation omitted).
>
> In determining whether the employee's speech addresses a "matter of public concern," the Court must first consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. Second, the Court must determine if the value of the expression outweighs "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Id.* at 150, 103 S.Ct. 1684. Thus, a discharged public employee is entitled to no redress if his expression is not relat-

ed to a matter of public concern or, even if it is so related, its value is outweighed by that of permitting the government to take action promoting efficiency and effectiveness. *See Azzaro,* 110 F.3d at 976.

Mag. J. Rep. & Rec., May 7, 2004, at 32–33.

Plaintiff contends that because he was employed by the state his reprimands of subordinate employees, even though they were made internally in the Bergen County civil division office, were matters of public concern and therefore must be protected by the First Amendment. In *Connick,* the Supreme Court set out the standard for protected speech by holding that for speech to be protected it must involve a matter of public concern and may not constitute merely personal grievances. 461 U.S. at 148, 103 S.Ct. 1684; *see also Azarro,* 110 F.3d at 976, 110 F.3d 968. Viewing the facts in the light most favorable to Plaintiff, this Court agrees with Judge Shwartz's analysis and concludes that the content and context of the informal admonishments of subordinate employees—especially when they were related solely to routine office issues including absenteeism, overtime, and failure to discipline subordinates—were not matters of public concern. *See McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983) (holding that "[s]peech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personal disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies").

### 4. Objection to Finding on Failure to Satisfy Pleading Requirements for Equal Protection Claims

After Judge Shwartz analyzed Plaintiff's equal protection claims and recommended

summary judgment in favor of Defendants, she noted that Plaintiff's equal protection claim was also plead incorrectly.[7] She stated:

> [P]laintiff's verified complaint and pre-trial order are devoid of any allegation or claim that the defendants acted under color of state law to intentionally treat plaintiff differently from other "similarly situated" individuals and that there was no rational basis for such treatment. Such pleading is required to survive a motion to dismiss. *See Cinaglia v. Levin*, 258 F.Supp.2d 390, 394–95 (D.N.J. 2003); *Little v. Terhune*, 200 F.Supp.2d 445, 450 (D.N.J.2002).... Thus, the plaintiff's claim fails for both lack of proof and on the pleadings.

Mag. J. Rep. & Rec., May 7, 2004, at 48, n. 27 (citations omitted).

■ Plaintiff objects to Judge Shwartz's footnote because he argues that he properly set forth a short and plain statement alleging that Defendants violated his equal protection rights. Although the Federal Rules of Civil Procedure require only "a short and plain statement" of the claim in order to provide Defendants with fair notice, *Leatherman v. Tarrant County NICU*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Plaintiff's complaint and pretrial order must also contain an allegation or claim that the Defendants acted under the color of state law when they intentionally treated Plaintiff differently from other similarly situated individuals and that there was no rational basis for such treatment, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *see also Cinaglia*, 258 F.Supp.2d at 394–95; *Little*, 200 F.Supp.2d at 450 (D.N.J.2002). Plaintiff's

verified complaint and pre-trial order are devoid of any such allegation or claim. Accordingly, this Court adopts Judge Shwartz's alternate finding in footnote 27 of her Report and Recommendation.

5. *Objection to Finding that Plaintiff Had Not Invoked EEO Anti–Discrimination Procedures Despite Its Invocation Being A Basis Of Plaintiff's "Class of One" Equal Protection Claim*

■ Judge Shwartz granted summary judgment against Plaintiff's Fourteenth Amendment "Class of One" discrimination claim because, *inter alia*, Plaintiff never invoked the EEO anti-discrimination procedures that Plaintiff claims were discriminatorily applied. She found that Plaintiff was incorrect in contending that memoranda to the Defendants should be interpreted as an effort to invoke the procedures, even though the memoranda do not allege age or gender discrimination as required. Judge Shwartz explains:

> [m]oreover, plaintiff's class of one theory that he was differently treated from others who invoked the EEO Policies fails. Plaintiff claims that the female employees who invoked the EEO Policies were treated differently from him because there was an investigation of their complaints but there was no investigation of his claims of retaliation. The type of retaliation about which plaintiff complained was more akin to his defense or explanation for why negative things were being said about him. It is not the sort of retaliation that the EEO Policies address. The EEO Policies' anti-retaliation provisions protect those who invoke them to complain about *illegal* discrimi-

---

7. Judge Shwartz recommended summary judgment in favor of Defendants on all three of Plaintiff's equal protection claims (age, gender, and "class of one") on grounds independent of the Judge's note regarding Plain-

tiff's pleading. Plaintiff's objections with respect to age and "class of one" discrimination are considered in Part II.C.2 and Part II.C.5, respectively, of this opinion. Plaintiff made no objection with respect to gender.

nation from facing negative job consequences. The retaliatory motive the plaintiff ascribes to his subordinates at the time was that they were disgruntled, not that they were motivated by illegal ageism or sexism. Given the way he presented his position to Mr. Goodman at the time of his memos, the plaintiff would be hard pressed to say that he was seeking protection for illegal discrimination. Indeed, plaintiff has offered no evidence that he asked the defendants to take any action other than to consider his explanation and his view of the motive of the complainants. In short, there is no evidence from which a reasonable juror could find that plaintiff was invoking the EEO Policies anti-discrimination and anti-retaliation provisions or even that the retaliation provisions applied. Thus, the plaintiff cannot claim the policies were applied differently to him.

Mag. J. Rep. & Rec., May 7, 2004, at 46–47.

Plaintiff now asks this Court to infer that valid discrimination allegations existed. However, even when viewed in the light most favorable to Plaintiff, no reasonable jury could infer from the circumstances and from what is lacking in Plaintiff's memoranda that he sought to invoke EEO procedures. Thus, Defendants were never even given the opportunity to apply the EEO policies to Plaintiff, much less apply them unfairly.[8]

6. *Defendant's Objection to Recommendation to Decline Exercise of Supplemental Jurisdiction over Remaining NJ LAD Claims*

After recommending summary judgment in favor of Defendants on all federal claims before trial, Judge Shwartz further recom-

mended that this Court decline to exercise supplemental jurisdiction over Plaintiff's remaining NJ LAD claims (Counts V, IX and XII). Mag. J. Rep. & Rec., May 7, 2004, at 49–50. Defendants request that this Court exercise supplemental jurisdiction over Plaintiff's NJ LAD claims because state and federal claims in this case share a common nucleus of operative facts and for reasons of judicial economy, convenience, and fairness.

The authority to exercise supplemental jurisdiction need not be exercised in every case in which it is found to exist. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, it is well-settled law that this Court's exercise of supplemental jurisdiction is discretionary. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

This Court adopts Judge Shwartz's recommendation to decline exercising supplemental jurisdiction over the remaining NJ LAD claims, with the exception of Plaintiff's gender discrimination claim based on the NJ LAD. In concluding that Plaintiff had not presented evidence to establish a prima facie case of deprivation of an equal protection of the law based on gender, Judge Shwartz applied federal legal standards substantially the same as the NJ LAD standards a New Jersey court would have applied when adjudicating gender discrimination claims. *See Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 723 A.2d 944 (1999) (adopting standard set by United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In analyzing claims under the NJ LAD, New Jersey courts have adopted the three-

---

**8.** This objection by Plaintiff was hardly clear, not citing a case and only a page and a half in length. Nonetheless, this Court has done its best to capture the basis of Plaintiff's objection as a "Class of One" claim.

stage inquiry set forth in *McDonnell Douglas. Bergen,* 157 N.J. at 210, 723 A.2d 944 (quoting *Andersen v. Exxon Co.,* 89 N.J. 483, 492, 446 A.2d 486 (1982)); *see also Mogull v. CB Commercial Real Estate Group, Inc.,* 162 N.J. 449, 462, 744 A.2d 1186 (2000); *Clowes v. Terminix Intern., Inc.,* 109 N.J. 575, 597, 538 A.2d 794 (1988). Because the federal and NJ LAD standards are virtually identical, this Court shall grant summary judgment in favor of Defendants on Plaintiff's NJ LAD gender discrimination claim for the reasons stated with respect to the federal gender discrimination claim.

## III. Plaintiff's Rule 54(b) Motion to Vacate (a/k/a Reconsider)

This Court now considers whether to vacate its March 31, 2004 Order which dismissed Plaintiff's intentional tort claims for failure to meet New Jersey Tort Claims Act notice requirements, in light of new law recently handed down by the New Jersey Supreme Court.

### A. Background

In Judge Shwartz's March 8, 2004 Dismissal Report and Recommendation, she recommended the dismissal of Plaintiff's claims for intentional infliction of emotional distress (Count VII), civil conspiracy (Count VIII), defamation (Count X), and interference with economic advantage (Count XI). On March 31, 2004, absent the parties' objections, this Court adopted Judge Shwartz's Report and Recommendation. Plaintiff now argues that this Court must vacate that Order because the June 29, 2004 New Jersey Supreme Court decision in *Velez v. City of Jersey City,* 180 N.J. 284, 850 A.2d 1238 (2004) created a new rule of law that must be prospectively applied.[9]

### B. Standard

As long as some claims are still pending in a case, a motion for reconsideration may be filed pursuant to Fed. R.Civ.P. 54(b) in order to vacate or revise a prior Order. The rule states "any order or other form of decision, however designated, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b); *see also UGI Corp. v. Clark,* 747 F.2d 893, 894 (3d Cir.1984); *Philadelphia Reserve Supply Co. v. Nowalk & Assoc., Inc.,* 864 F.Supp. 1456, 1460 (E.D.Pa.1994) (granting plaintiff's motion for reconsideration even though 10 day time period allowed by local rule had passed because controlling state appellate court decision was published more than 10 days after order rendered). Although the district court has the power to revisit an earlier adjudication, the court is not required to do so and should not depart from prior rulings without good reason. 10 James Wm. Moore et al., *Moore's Federal Practice* 54.25[4] (3d ed. 2003).

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985); *see also, Yurecko v. Port Authority Trans–Hudson,* 279 F.Supp.2d 606, 608–609 (D.N.J.2003). A court may grant a properly filed motion for reconsideration for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent

---

**9.** See analysis below as to the meaning of this phrase in the context of this case.

manifest injustice. *Database America v. Bellsouth Advertising & Publ'g.*, 825 F.Supp. 1216, 1220 (D.N.J.1993) (*citing Weyerhaeuser Corp. v. Koppers Co.*, 771 F.Supp. 1406, 1419 (D.Md.1991)). Because reconsideration of a judgment after its entry is an extraordinary remedy, motions to reconsider or reargue are granted "very sparingly," *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986), only where "dispositive factual matters or controlling decisions of law were overlooked by the Court in reaching its prior decision," and if the overlooked matter "might reasonably have resulted in a different conclusion [by the court]." *United States v. Compaction Systems Corp.*, 88 F.Supp.2d 339, 345–46 (D.N.J.1999).

## C. Analysis

 In her Dismissal Report and Recommendation, Judge Shwartz applied existing case law to reach the conclusion that the New Jersey Tort Claims Act's ("TCA")[10] notice provisions applied to Plaintiff's intentional infliction of emotional distress, civil conspiracy, tortious interference with economic advantage, and defamation claims. At the time of Judge Shwartz's Dismissal Report and Recommendation, the New Jersey Supreme Court had not yet ruled on whether intentional conduct was encompassed by a legislative amendment to the TCA that extended the notice requirements to maintain suits against public employees. *See Velez*, 180 N.J. at 291, 850 A.2d 1238. Judge Shwartz concluded that Plaintiff was required to provide notice, relying upon *Bonitsis v. N.J. Institute of Technology*, 363 N.J.Super. 505, 528, 833 A.2d 679 (2003), which held that New Jersey law implies "that the notice provisions of the [TCA] are applicable to intentional torts." *Id.* at 519, 833 A.2d 679.[11] At approximately the same time, another New Jersey Appellate Division panel, in *Velez v. City of Jersey City*, 358 N.J.Super. 224, 817 A.2d 409 (2003), interpreted the TCA to exclude assault and battery claims from notice requirements in cases where a public employee allegedly engaged in "outrageous conduct" outside the scope of his employment. *Id.* at 238–240, 817 A.2d 409. The Appellate Division in *Velez*, however, affirmed the dismissal of the plaintiff's intentional infliction of emotional distress claim

---

**10.** The New Jersey Tort Claims Act provides that "no action shall be brought against a *public entity* or *public employee* under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8–3 (emphasis added). The Act was a legislative response to the New Jersey Supreme Court's decision in *Willis v. Dept. of Conservation & Economic Development*, 55 N.J. 534, 264 A.2d 34 (1970), "which abrogated total governmental immunity from tort liability." *Fuchilla v. Layman*, 109 N.J. 319, 335, 537 A.2d 652 (1988). N.J.S.A. 59:8–3 was amended in 1994 to mandate notice requirements in order to maintain a suit against a "public employee," L. 1994, c. 49, § 2, eff. June 23, 1994, in addition to earlier notice requirements for suits against a "public entity." *See Chatman v. Hall*, 128 N.J. 394, 403, 608 A.2d 263 (1992) (finding that notice-of-claim provisions of the TCA do not apply to public employees, in a pre-amendment case).

**11.** Given her duty to predict how the New Jersey Supreme Court might rule on the issue, Judge Shwartz acted properly in concluding that the TCA's notice provisions applied to Plaintiff's intentional tort claims, pursuant to *Doe v. Division of Youth and Family Services*, 148 F.Supp.2d 462 (D.N.J. 2001) (holding that "where the state's highest court has not spoken on an issue, the role of the district court is to predict how the court would rule if the issue were presented to it"). *Id.* at 502. When predicting how a state's highest court might rule on an unresolved question, the court may find decisions by intermediate appellate courts of the state persuasive. *Id.; see also Robinson v. Jiffy Executive Limousine*, 4 F.3d 237, 239–40 (3d Cir. 1999).

for failure to provide adequate notice. *Id.* at 241, 817 A.2d 409.

In 2004, the New Jersey Supreme Court, in its review of *Velez*, analyzed *Bonitsis's* interpretation of the TCA's notice provisions. *Velez*, 180 N.J. at 292–96, 850 A.2d 1238. The New Jersey Supreme Court adopted *Bonitsis's* interpretation and concluded that the TCA's notice provisions apply to all intentional tort claims. *Id.* Accordingly, the New Jersey Supreme Court affirmed the portion of *Velez* requiring notice for claims of intentional infliction of emotional distress, but reversed the portion exempting assault and battery. *Id.* at 296, 850 A.2d 1238.

More importantly for purposes of the instant motion, the New Jersey Supreme Court concluded that it had created a new rule of law and that its decision requiring notice for all claims shall be "applied prospectively to all similar causes of action accruing after [June 29, 2004]." *Id.* at 297, 850 A.2d 1238. Plaintiff contends that the New Jersey Supreme Court intended that all causes of action claiming intentional torts prior to June 29, 2004 do not require notice because *Velez's* ruling requiring notice applies purely prospectively, i.e. requiring notice for intentional torts only to cases whose operative facts arose after the new law was announced. Defendants counter that by creating a new rule of law, *Velez's* ruling applies only partially prospectively, i.e. still requiring notice for intentional torts but excluding assault and battery. *See Rutherford Educ. Ass'n v. Bd. of Educ. of Rutherford*, 99 N.J. 8, 21, 489 A.2d 1148 (1985) (defining the phrases "purely prospectively" and "partially prospectively").

Although the New Jersey Supreme Court discussed the *Velez* Appellate Division's ruling with regard to notice requirements for assault and battery claims only, thus suggesting that its ruling should be applied with partial prospectivity, the Supreme Court stated without qualification at the outset that "the issue in this appeal is whether the notice of claim requirements under the New Jersey Claims Act … apply to common law intentional tort claims," thereby suggesting that it considered the TCA's notice provisions as applying purely prospectively to *all* intentional torts, not simply assault and battery. *Velez*, 180 N.J. at 286, 850 A.2d 1238. On June 30, 2004, the New Jersey Supreme Court also remanded *Bonitsis* to the New Jersey Superior Court for reinstatement of that case's intentional tort claims, which had been dismissed for failure to provide notice. *Bonitsis v. N.J. Institute of Technology*, 180 N.J. 450, 852 A.2d 188 (2004). On July 21, 2004, a New Jersey court, because of *Velez's* purely prospective application, reinstated various intentional tort claims, including assault and battery, false imprisonment, false arrest, and malicious prosecution, against individual municipal police officers, which had been dismissed in 2002 for failure to provide notice. *See Ptaszynski v. Uwaneme*, 371 N.J.Super. 333, 853 A.2d 288, 2004 WL 1620810 (2004).

In light of *Velez* and the remand of *Bonitsis*, this Court shall vacate its March 31, 2004 Order, which dismissed Plaintiff's intentional tort claims for his failure to provide notice as required by the TCA. As these state law claims have only been analyzed by this Court pursuant to a motion to dismiss and have not been reviewed on their merits, this Court shall decline to exercise supplemental jurisdiction over them.

**CONCLUSION**

After having reviewed Judge Shwartz's Report and Recommendation and the record of this case, including the parties' objections and submissions thereto, this Court shall: (1) affirm Judge Shwartz's Discovery Order denying Plaintiff's re-

quest to reopen discovery and to admit additional certifications; (2) adopt Judge Shwartz's Summary Judgment Report and Recommendation granting summary judgment in favor of Defendants on all of Plaintiff's federal claims (Counts I–IV); (3) adopt Judge Shwartz's Summary Judgment Report and Recommendation granting summary judgment in favor of Defendants on Plaintiff's breach of contract claim (Count VI); (4) not adopt Judge Shwartz's Summary Judgment Report and Recommendation declining to exercise supplemental jurisdiction over Plaintiff's gender discrimination claim based on the NJ LAD (Count V), and grant summary judgment in favor of Defendants; (5) vacate its March 31, 2004 Order adopting Judge Shwartz's Dismissal Report and Recommendation; and (6) decline to exercise supplemental jurisdiction over all of Plaintiff's remaining state law claims, namely age discrimination based on NJ LAD (Count V), retaliation (Count IX), punitive damages (Count XII), and the intentional torts of: (a) intentional infliction of emotional distress (Count VII), (b) civil conspiracy (Count VIII), (c) defamation (Count X), and (d) interference with economic advantage (Count XI).

An appropriate order shall issue.