850 A.2d 1238

NANCY VELEZ, PLAINTIFF–RESPONDENT, v. CITY OF JERSEY CITY, COUNTY OF HUDSON, ABC CORP. (SAID NAME BEING FICTITIOUS AND UNKNOWN), ABC COMPANY (SAID NAME BEING FICTITIOUS AND UNKNOWN), DEF CORP. (SAID NAME BEING FICTITIOUS AND UNKNOWN), JOHN DOE (SAID NAME BEING FICTITIOUS AND UNKNOWN), JOHN ROE (SAID NAME BEING FICTITIOUS AND UNKNOWN) AND ROE DOE (SAID NAME BEING FICTITIOUS AND UNKNOWN), DEFENDANTS, AND ARNOLD BETTINGER, DEFENDANT–APPELLANT.

Argued November 17, 2003—Decided June 29, 2004.

*John L. Shahdanian, II* argued the cause for appellant (*Chasan, Leyner, Bariso & Lamparello,* attorneys; *Ralph J. Lamparello,* of counsel).

*Cynthia Gill* argued the cause for respondent (*Davis, Saperstein & Salomon,* attorneys).

*Karen L. Jordan,* Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel).

Justice WALLACE delivered the opinion of the Court.

The issue in this appeal is whether the notice of claim requirements under the New Jersey Tort Claims Act (Act), *N.J.S.A.* 59:1–1 to 12–3, apply to common law intentional tort claims. The Appellate Division held that the Act's notice requirements did not apply to plaintiff's assault and battery claim against defendant, who is a public employee. *Velez v. City of Jersey City,* 358 *N.J.Super.* 224, 817 *A.*2d 409 (2003). We granted defendant's petition for certification, 177 *N.J.* 224, 827 *A.*2d 291 (2003), and granted the Attorney General *amicus curiae* status. We now hold that a plaintiff must give a public entity written notice, pursuant to the Act, prior to filing a common law intentional tort action against a public employee. However, for the reasons set forth in section IV of this opinion, we affirm the judgment of the Appellate Division.

## I.

The facts are uncomplicated. Plaintiff, Nancy Velez, is a former employee of the City of Jersey City (City), where she worked in the Neighborhood Improvement Division (NID). Defendant, Arnold Bettinger, was a City councilman and was the Hudson County Division Chief in charge of central services.

In October or November 1997, plaintiff sought defendant's assistance, in his role as councilman, to obtain child support from her former husband. Defendant indicated that he would try to help her. A few weeks later, plaintiff learned she would receive the past due child support as a result of defendant's intervention.

On December 1, 1997, plaintiff went to defendant's office to thank him personally for his help. She alleged that when she attempted to shake defendant's hand, he responded, "[t]his doesn't

deserve a handshake, this deserves a hug," and then hugged and kissed her. Allegedly, defendant then fondled and groped plaintiff before she struggled free. Plaintiff claimed she orally reported that incident to numerous NID management employees, union officials, family members, family doctors, and coworkers, but she never directly notified the City in writing. The City did not investigate or respond to her allegations.

Subsequently, plaintiff incurred an unrelated, on-the-job injury that caused her to take an extended leave of absence. She remained out of work from December 1997 through March 1999.

On November 10, 1999, plaintiff filed a fourteen-count complaint against the City and defendant. She asserted various common law tort claims, including assault and battery, and violations of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -49. The City and defendant answered, and defendant counterclaimed, alleging malicious prosecution and defamation.

Following discovery, defendant and the City each moved for summary judgment. Plaintiff cross-motioned for summary judgment and for dismissal of defendant's counterclaims. The trial court granted summary judgment in favor of defendant and the City with respect to plaintiff's common law claims due to her failure to give timely notice under *N.J.S.A.* 59:8-8, but denied the motions with respect to the LAD claims. Plaintiff's cross-motion was denied, but defendant voluntarily dismissed his counterclaims.

Plaintiff and defendant sought reconsideration, which the City opposed. The trial court considered all arguments anew and dismissed the entirety of plaintiff's complaint, including the LAD claims. The court ruled that plaintiff failed to demonstrate a triable issue of material fact with respect to her LAD claims, and that plaintiff's failure to file a tort claim notice with the City within ninety days of the incident barred her common law claims.

On appeal, plaintiff challenged the trial court's order, except for the dismissal of the LAD claims against defendant. In a published opinion, the Appellate Division reversed the grant of summary

judgment on plaintiff's assault and battery claim against defendant and the LAD claims against the City, but affirmed the dismissal of the remaining claims. *Velez, supra,* 358 *N.J.Super.* at 240–41, 817 *A.*2d 409.

With respect to the LAD claims against the City, the panel found sufficient facts to establish a triable issue concerning the City's [1] negligent failure to adequately enforce its own sexual harassment policy. *Id.* at 236, 817 *A.*2d 409. As to the assault and battery claim against defendant, the panel concluded that plaintiff's verbal notification given to various City officials was insufficient to satisfy the Act's notice requirements because the notice must be in writing. *Id.* at 238, 817 *A.*2d 409. However, the panel also found that although the 1994 expansion of the Act's notice requirements encompasses actions against public employees, it was not intended to modify the plain meaning of *N.J.S.A.* 59:3–14, which excludes outrageous conduct from statutory immunity. *Id.* at 240, 817 *A.*2d 409. The panel reasoned:

> The 1972 Task Force Comment to the Act makes it clear that the intent behind *N.J.S.A.* 59:3–14 is to prevent public employee[s] guilty of outrageous conduct from availing themselves of the limitations as to liability and damages contained in [the] [A]ct. The assault and battery alleged to have been perpetrated by [defendant] would be outside the scope of his duties as a councilman. If proven, [defendant's] actions would qualify as the type of outrageous conduct sought to be excluded from the protections of the Act by *N.J.S.A.* 59:3–14. To permit [defendant] to avail himself of the notice provisions to avoid liability for such outrageous conduct would, under these circumstances, run counter to legislative intent and the overall purpose of the Act.
>
> [*Ibid.* (first and second alterations in original) (quotation marks omitted).]

Thus, the panel concluded that plaintiff was not required to file a notice of claim with the City to assert her common law assault and battery claim against defendant. *Ibid.*

## II.

Defendant contends that a plain reading of the Act mandates that a plaintiff give notice to a public entity and to a public

---

[1] The City did not appeal the Appellate Division reversal of summary judgment and it is not part of this appeal.

employee prior to filing a civil assault and battery complaint against either. The State also urges that we interpret the Act to require notice to both a public entity and a public employee prior to filing a complaint alleging tortious intentional conduct.

Conversely, plaintiff maintains that because defendant's intentional acts are exempted from immunity under *N.J.S.A.* 59:3-14, the notice requirements do not apply. Further, plaintiff analogizes her assault and battery claim against defendant to discrimination claims governed by the LAD, which need not comply with the notice provisions of the Act.

Preliminarily, we review the relevant provisions and the history of the Act. In *Willis v. Department of Conserv. & Econ. Dev.,* 55 *N.J.* 534, 536–41, 264 *A.2d* 34 (1970), the Court abrogated sovereign immunity from tort liability in this State. In 1972, the Legislature responded by adopting the Act and reestablishing sovereign immunity in a manner consistent with the proposals contained in the 1972 Attorney General's Task Force Report on Sovereign Immunity. *See Rochinsky v. State,* 110 *N.J.* 399, 407 n. 4, 541 *A.2d* 1029 (1988) (noting that comments to "certain sections of the statute were taken from the [r]eport ... and accompanied the Act during its consideration by the Legislature"). Modeled after the California Tort Claims Act of 1963, *Ayers v. Township of Jackson,* 106 *N.J.* 557, 575 n. 4, 525 *A.2d* 287 (1987), the Act contains the following legislative declaration:

> The Legislature recognizes the inherently unfair and inequitable results that occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this [A]ct and in accordance with the fair and uniform principles established herein. All of the provisions of this [A]ct should be construed with a view to carry out the above legislative declaration.
>
> [*N.J.S.A.* 59:1–2.]

The Act " 'is dispositive, with respect to causes of action in tort accruing on and after [July 1, 1972], of the nature, extent and

scope of state and local tort liability and the procedural requisites for prosecuting tort claims against governmental agencies.'" *Wright v. State*, 169 *N.J.* 422, 435, 778 *A.*2d 443 (2001) (quoting Pressler, *Current N.J. Court Rules*, comment 17.1 on *R.* 4:5–4 (2001)). Prior to filing a complaint, a plaintiff must submit a notice of claim to the public entity within ninety days of the claim's accrual, *N.J.S.A.* 59:8–8a, and must file suit within two years after the claim's accrual, *N.J.S.A.* 59:8–8b. The notice must include the name of the public entity, and the name of the employee or employees causing the injury, if known. *N.J.S.A.* 59:8–4e. "[T]he notice [requirements are] triggered by the occurrence of injury and [notice] must be filed in order for a complaint to be lodged against the public entity." *Beauchamp v. Amedio*, 164 *N.J.* 111, 121, 751 *A.*2d 1047 (2000).

The purposes of the notice requirements are:

(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.

[*Id.* at 121–22, 751 *A.*2d 1047 (internal quotations and citations omitted).]

In 1992, this Court held that various protections of the Act, including the notice provisions, did not apply to actions against public employees. *Chatman v. Hall*, 128 *N.J.* 394, 608 *A.*2d 263 (1992). In *Chatman*, the Court first observed that the Act's language created "the apparent anomaly that public employees may be exposed to greater liability than their public employers." *Id.* at 402–03, 608 *A.*2d 263. While noting that a public entity would not be liable for the negligence action presented there, the *Chatman* Court held that "under the [Act] . . . public employees owe a duty to members of the public to protect against the dangerous condition of public property and that such employees are not immune from suit under the 'inspection' immunities of the Act." *Ibid.* After identifying the appropriate negligence standards applicable to public employees, *id.* at 412–18, 608 *A.*2d 263,

the Court then dealt specifically with the notice requirements, *id.* at 418–20, 608 *A.*2d 263. The Court determined that the notice provisions were inapplicable to actions against public employees and that such actions were governed by the ordinary statute of limitations. *Id.* at 419–20, 608 *A.*2d 263.

Following the *Chatman* decision, the Legislature amended the Act to create a parallel liability scheme for public employees and public entities. Sponsor's Statement to *L.* 1994, *c.* 49, § 1; *see also* Margolis & Novack, *Claims Against Public Entities,* comment on *N.J.S.A.* 59:3–1c (2004) (stating purpose of 1994 amendment was "to ensure that public employees will not be found liable on the basis of a negligence standard where the public entity would be liable only if palpably unreasonable"). The revised Act specifically provided that "[a] public employee is not liable for an injury where a public entity is immune from liability for that injury." *N.J.S.A.* 59:3–1c. Consistent with the theme of parallel protection, the Legislature also amended the Act to expressly bar recovery against a public employee if the notice requirements of the Act are not met. *N.J.S.A.* 59:8–8; *see also* Margolis & Novack, *supra,* comment on *N.J.S.A.* 59:8–8 (noting failure to satisfy notice requirements "constitutes an absolute bar to recovery against an employee").

One other section of the Act is relevant to the disposition of this appeal. Both before and after the 1994 amendments, the Act provided that "[n]othing in this [A]ct shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." *N.J.S.A.* 59:3–14a. The 1972 Task Force Comment to this section explained, "It is the intent of this provision that a public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability and damages contained in this [A]ct." *N.J.S.A.* 59:3–14 comment.

### III.

■ We now address whether the amendment to *N.J.S.A.* 59:8–8, extending the application of the notice provisions to actions

against public employees, was intended to apply to intentional conduct.

As noted above, the Appellate Division panel interpreted the Act to exclude the asserted assault and battery claim from the notice requirements. *Velez, supra,* 358 *N.J.Super.* at 239–240, 817 *A.*2d 409. Another Appellate Division panel recently addressed this issue and reached a different conclusion. *Bonitsis v. New Jersey Inst. of Tech.,* 363 *N.J.Super.* 505, 833 *A.*2d 679 (2003). In *Bonitsis,* the plaintiff filed a complaint asserting claims for tortious interference with his employment contract and for intentional infliction of emotional distress against two supervisors. *Id.* at 512, 833 *A.*2d 679. However, the plaintiff failed to comply with the Act's notice provisions and the trial court dismissed his complaint. *Id.* at 510, 833 *A.*2d 679. On appeal, the panel affirmed the dismissal and concluded that New Jersey law implies "that the notice provisions of the Act are applicable to intentional torts." *Id.* at 519, 833 *A.*2d 679. The panel noted that New Jersey case law is consistent with current commentary stating that " 'the notice requirement[s] [of the Act] appear[ ] to apply even where the alleged tort is entirely due to actual fraud, actual malice, willful misconduct or an intentional wrong.' " *Id.* at 520, 833 *A.*2d 679 (quoting Margolis & Novack, *supra,* comment on *N.J.S.A.* 59:10–4) (second alteration in original). The panel further noted that its decision was consistent with California precedent interpreting the California Tort Claims Act, *Cal. Gov't Code* §§ 810 to 996. *Ibid.* (citing *Tietz v. Los Angeles Unified Sch. Dist.,* 238 *Cal.App.*2d 905, 48 *Cal.Rptr.* 245, 249 (1965), *cert. denied,* 385 *U.S.* 8, 87 *S.Ct.* 53, 17 *L.Ed.*2d 7 (1966)).

The panel listed four persuasive reasons for its conclusion that the Act's notice provisions apply to intentional tort claims. First, the definition of "injury" in *N.J.S.A.* 59:1–3 is broad enough to encompass injuries inflicted from intentional as well as negligent conduct. *Ibid.* Second, the express language of the notice provisions do not distinguish between negligence claims and intentional torts. *Ibid.* Rather, the Act "states that '[n]o action shall be

brought against a public entity or public employee under this [A]ct unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.' " *Id.* at 520–21, 833 *A.*2d 679 (quoting *N.J.S.A.* 59:8–3) (alterations in original). Third, the panel found that requiring notice in actions against a public employee is consistent with the purpose of the notice provisions, allowing a public entity an opportunity to correct the practices giving rise to the claim. *Id.* at 521, 833 *A.*2d 679 (citing *Beauchamp, supra,* 164 *N.J.* at 121–22, 751 *A.*2d 1047). The panel concluded that proper notice would provide a public entity "with an opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices, if necessary, regardless of whether the [public entity] is liable for damages." *Ibid.* Finally, the panel reasoned that requiring notice would "give a public entity an opportunity to determine whether it will indemnify the [accused] employee," despite the fact that it may be immune from liability. *Ibid.*

We are in substantial accord with Judge Winklestein's analysis in *Bonitsis,* and with the conclusion that the notice provisions in the Act apply to causes of action based on the intentional conduct of a public employee.

*N.J.S.A.* 59:8–8 was amended in 1994 to require a complaining party to give a public entity notice of "[a] claim relating to a cause of action for death or for injury or damage to person or to property" against a public entity or *public employee.* Otherwise, "[t]he claimant shall be forever barred from recovering against a public entity or public employee." *Ibid.* The Act defines injury as "death, injury to a person, damage to or loss of property or any other injury that a person may suffer that would be actionable if inflicted by a private person." *N.J.S.A.* 59:1–3. This "statutory definition is expansive and unqualified." *Ayers, supra,* 106 *N.J.* at 575, 525 *A.*2d 287.

Prior to the 1994 amendment, the Court did not answer whether this statutory definition of injury was so expansive as to include

injuries resulting from intentional torts as well as negligence. *Fuchilla v. Layman,* 109 *N.J.* 319, 335, 537 *A.*2d 652, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). We now answer that question in the affirmative. We conclude that the absence of any reference to negligence within the definition of "injury" is consistent with the Legislature's intent that the Act's notice requirements encompass injuries arising from intentional conduct as well as negligent conduct. In our view, this interpretation furthers the Act's two central purposes: (1) restricting a public entity's liability in tort, and (2) creating a relatively short notice filing period "so [a public entity can] investigate and settle claims." *Id.* at 336, 537 *A.*2d 652.

Under *N.J.S.A.* 59:3–14, a public employee is not immune if he or she engaged in conduct that "constituted a crime, actual fraud, actual malice or willful misconduct." However, that provision must be read together with the overall mandate of *N.J.S.A.* 59:8–3, that "[n]o action shall be brought against a public entity or public employee under this [A]ct unless the claim [is] ... presented in accordance with the procedure set forth in this [Act]." We discern nothing in the Act's legislative history or statutory scheme that indicates the Legislature intended the notice requirements to apply solely to claims based in negligence. Although the Act's pre-amendment legislative declaration only mentions negligence, this does not contradict our holding because the declaration defines the parameters of mandatory liability only for public entities under the Act. It does not limit the necessity of notice. When defining the parameters of notice in the 1994 amendments, the Legislature sought to bring the "injury" caused by the public entity or public employee under the umbrella of the Act's notice requirements. We are convinced that if the Legislature intended to exclude intentional torts from the notice requirements, it would have expressly done so when it amended *N.J.S.A.* 59:8–3 and 59:8–8. It did not.

Our interpretation of the Act is consistent with prior cases in which courts have concluded that the Act's notice requirements

apply to conduct that arguably could be classified as the intentional or outrageous conduct described in *N.J.S.A.* 59:3–14. *See Epstein v. State,* 311 *N.J.Super.* 350, 355–56, 709 *A.*2d 1353 (App.Div.), *certif. denied,* 155 *N.J.* 589, 715 *A.*2d 992 (1998) (barring claims for malicious prosecution, libel, slander, defamation, and emotional distress due to failure to file timely notice of claim with local public entities); *Dunn v. Borough of Mountainside,* 301 *N.J.Super.* 262, 275–76, 693 *A.*2d 1248 (App.Div.1997), *certif. denied,* 153 *N.J.* 402, 709 *A.*2d 795 (1998) (noting that under post–1994 Act, plaintiff's sexual assault claim against police officer would be barred due to failure to file timely notice of claim); *Pisano v. City of Union City,* 198 *N.J.Super.* 588, 590, 487 *A.*2d 1296 (Law Div.1984) (determining that claims of false arrest and false imprisonment must be presented to public entities within ninety days after accrual and are barred by the Act after two years have lapsed); *Garlanger v. Verbeke,* 223 *F.Supp.*2d 596, 602 (D.N.J.2002) (noting Act's notice requirement applicable to claims for intentional infliction of emotional distress, malicious prosecution and false arrest); *Rolax v. Whitman,* 175 *F.Supp.*2d 720, 730 (D.N.J.2001) (holding Act's notice requirement applicable to battery claim).

We recognize that in limited circumstances, the Court has held that the Act's notice requirements are inapplicable to tort actions against a public entity or a public employee. For instance, in *Fuchilla, supra,* the Court addressed whether the Act's notice provisions applied to discrimination claims brought pursuant to Title VII of the Federal Civil Rights Act, 42 *U.S.C.A.* § 1983, and the LAD. 109 *N.J.* at 332–338, 537 *A.*2d 652. After reviewing the history, purpose, and provisions of both the Act and the LAD, *id.* at 332–37, 537 *A.*2d 652, the Court concluded that "the Legislature did not intend that claims of discrimination be subject to the notice requirements of the Act," *id.* at 337–38, 537 *A.*2d 652.

Similarly, in *Greenway Dev. Co. v. Borough of Paramus,* 163 *N.J.* 546, 750 *A.*2d 764 (2000), the Court addressed whether the Act's notice requirements applied to an action for inverse condem-

nation. The Court held that because inverse condemnation is not an "injury" within the meaning of the Act, the notice provisions were not applicable. *Id.* at 557, 750 *A.*2d 764. Further, the Court noted that even if inverse condemnation were an injury, "[a] public entity may not use a state statute, such as the [Act], to abrogate a claimant's constitutional rights." *Id.* at 557–58, 750 *A.*2d 764.

However, unlike the LAD claims in *Fuchilla,* the tort claims at issue here are not statutory causes of action with specific procedural requirements and greater damage allowances than available at common law. Nor do the claims assert any state or federal constitutional rights that would supercede statutory limitations, such as in *Greenway.* Instead, these claims are basic common law tort claims, and we find no justification to conclude that the Legislature intended to exclude them from the Act's notice requirements.

█ Finally, we reject the State's invitation to extend the Act's notice requirements to mandate that written notice also be given to public employees. Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, *N.J.S.A.* 59:8–8 only requires that notice be given to the public entity. If the Legislature had intended to require that written notice be given to a public employee in the same manner as a public entity, it would have expressly done so when it amended *N.J.S.A.* 59:8–8. Again, it did not. Accordingly, the State's argument is better addressed to the Legislature.

In sum, we conclude that plaintiff's claims for assault and battery are encompassed within the term "injury," and that plaintiff should have given a notice of claim to the public entity.

## IV.

Finally, we must decide whether this decision should be applied prospectively only. "Although retroactive application of judicial decision[s] is the general rule, the primary focus in resolving questions of [prospectivity] is with considerations of fairness and

justice, related to reasonable surprise and prejudice to those affected." *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 600, 606 *A.*2d 1093 (1992) (citations and quotation marks omitted). Accordingly, prospective application is appropriate when (1) the decision establishes a new rule of law, by either overruling past precedent or deciding an issue of first impression, and (2) when retroactive application could produce substantial inequitable results. *Alderiso v. The Medical Center of Ocean County, Inc.,* 167 *N.J.* 191, 203, 770 *A.*2d 275 (2001).

A new rule of law is created when, in a case of first impression, "a plaintiff 'reasonably relie[s] on a plausible, although incorrect, interpretation of the law.'" *Id.* at 204, 770 *A.*2d 275. Here, plaintiff reasonably believed that *N.J.S.A.* 59:3–14a precluded application of the notice requirements to this case. The reasonableness of plaintiff's view is demonstrated by the fact that two panels of our Appellate Division came to opposite conclusions when reviewing this issue. Because this is a case of first impression before our Court and in view of the uncertainty of this issue, the "interests of justice will better be served by prospective application of our decision." *Green, supra,* 127 *N.J.* at 591, 606 *A.*2d 1093.

Accordingly, we hold that this decision will be applied prospectively to all similar causes of action accruing after the date of this opinion.

## V.

Although the basis of our decision differs from the court below, we affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.