**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2903-18T4
                      A-4443-18T4

H.C. EQUITIES, LP,

      Plaintiff-Appellant,

v.

COUNTY OF UNION, NEW
JERSEY, and UNION COUNTY
IMPROVEMENT AUTHORITY,

      Defendants-Respondents.

_____

Argued telephonically March 24, 2020 –
Decided May 12, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-2342-18.

A. Matthew Boxer argued the cause for appellant
(Lowenstein Sandler LLP, and Gruen & Goldstein,
attorneys; A. Matthew Boxer, Jarrett R. Schindler, and
Fred R. Gruen, on the briefs).

Thomas A. Abbate argued the cause for respondent
County of Union (DeCotiis, FitzPatrick, Cole & Giblin,

LLP, attorneys; Thomas A. Abbate, of counsel and on the briefs; Gregory J. Hazley, on the brief).

John F. Gillick argued for respondent Union County Improvement Authority (Rainone Coughlin Minchello, LLC, attorneys; John F. Gillick, on the brief).

PER CURIAM

In these consolidated matters, H.C. Equities, L.P. (H.C.) appeals from two orders granting defendants' motions to dismiss H.C.'s tort claims for failure to send a timely notice as required by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. H.C. also appeals from orders denying its cross-motion for an extension to file the tort claims notice. H.C. argues that it substantially complied with the TCA notice requirement by sending a series of letters to the lawyers representing defendants. We agree. Accordingly, we reverse and remand.

I.

We take the facts from the record developed on the motions to dismiss, which included documents and certifications beyond the pleadings. While the facts related to H.C.'s underlying claims are disputed, the material facts concerning the tort claim notice are established by the record.

These appeals arise from a long-standing landlord-tenant dispute between H.C. and the County of Union (the County). H.C. owns two buildings in

2

Elizabeth, known as the Albender building and the Bank building (collectively the Buildings). In 1998, H.C. leased the Buildings to the County for twenty-five years. The County then allowed the judiciary to use those buildings as offices for the probation department.

In July 2012, the Albender building was damaged by a fire. Consequently, the Albender building was vacated for several months and the County withheld rent payments. In 2013, H.C. sued the County for breach of the lease and sought damages for unpaid rent and late fees (the First Suit).

While the First Suit was pending, the parties engaged in settlement discussions. H.C. made a settlement offer proposing, among other things, a twenty-year extension of the lease. The County did not accept H.C.'s offer. Nevertheless, the parties continued to engage in settlement discussions.

In April 2015, the First Suit was voluntarily dismissed without prejudice so that the parties could continue settlement discussions. The dismissal order stated that H.C. could reinstate the action and, if the action was reinstated, the new trial date would be September 8, 2015.

H.C. contends that the parties thereafter worked towards finalizing a settlement on terms that H.C. had previously proposed. H.C. also asserts that the County informed it that it wanted to conduct a study of its office space needs

before formally agreeing to the settlement and the twenty-year lease extension. The County, by contrast, contends that no agreement was reached. The County also asserts that in 2015, it independently studied its office space needs. According to the County, it retained the Union County Improvement Authority (the Authority) to oversee the study. The Authority, in turn, retained an independent real estate firm, Colliers International (Colliers), to conduct the study.

In January 2017, Colliers prepared a "Review Draft" of the study, which was sent to a "working group" for review (the Draft Study). The Draft Study discussed numerous buildings, including the "Albender/Bank Building." In discussing the "Albender/Bank Building," the Draft Study noted certain "[s]ubstantial disadvantages" concerning that building, including "a small and inefficient floor plate, significant physical issues, and distance from the main judiciary complex. Extensive use of office space for file storage [is] not cost efficient."

The Draft Study was not sent to H.C., but H.C. obtained a copy. On February 22, 2017, counsel for H.C. sent a letter to counsel for the County and the Authority. In that letter, H.C. objected to "incorrect factual assumptions" in the Draft Study concerning the Buildings. H.C. requested that the study be

4

withdrawn and not considered by the County. The letter went on to state that if the Draft Study was not withdrawn, H.C. "will likely proceed with its original claim in [the First Suit] and prosecute additional causes of action against the appropriate parties including, but not limited to, tortious interference with the settlement, tortious interference with contract, and tortious interference with prospective economic advantage." In addition, the letter advised the County and the Authority that H.C. was asserting a litigation hold and demanding that all documents and materials concerning the dispute be preserved for litigation.

On March 8, 2017, counsel for H.C. sent a second letter, addressed to counsel for the Authority, and copying counsel for the County. That letter iterated H.C.'s concern about "the skewed conclusions and false statements of 'fact'" in the Draft Study. The letter also stated that H.C. "wishes to avoid litigation" but was prepared to "pursue those who sought to interfere with the final execution of the 'settlement agreement'" and to "reinstate . . . its original multimillion-dollar claims."

The following day, on March 9, 2017, another lawyer for H.C. sent a third letter to counsel for the County. That letter advised that counsel had been retained "to pursue all available remedies in connection with [the County's failure] to settle and arising out of the failure." In that regard, the letter stated:

"we will shortly be filing a civil action on behalf of [H.C.] in the Superior Court of New Jersey for injunctive relief and/or recover[y] [of] damages due [H.C.] from Union County and County employees and others in connection with the initial Settlement Agreement or its attempted frustration." Finally, the letter iterated H.C.s demand for a litigation hold.

On June 13, 2017, another attorney for H.C. sent the County a claim for damages on a tort claim form. In terms of its claim for damages, H.C. asserted:

> As set forth in the addendum, attached hereto, claimant has suffered damages arising from tortious interference with contract, tortious interference with prospective economic gain, violations of 42 U.S.C. § 1983 and the N.J. Civil Rights Act, violations of the Equal Protection and Due Process Clauses of the United States Constitution, racketeering, conspiracy, defamation, and trade libel.

As referenced, the alleged claims were further detailed in a twelve-page addendum attached to the tort claim notice.

In September 2017, Colliers sent the County a "Real Estate Strategic Plan: Programming Study for Probation" (the September 2017 Report). H.C. contends that the September 2017 Report was a final version of the Draft Report issued in January 2017. It also alleges that the September 2017 Report contained inaccuracies and misrepresentations about H.C.'s Buildings. The County disputes H.C.'s characterizations of the September 2017 Report. The County

6

asserts that the September 2017 Report was a second and separate report, which focused on the office space needs of the probation department.

In April 2018, H.C. filed this action against the County and the Authority. In its complaint, which it later amended, H.C. asserted seven causes of action: (1) breach of lease against the County; (2) breach of the settlement agreement against the County; (3) breach of the implied covenant of good faith and fair dealing against the County; (4) trade libel against the Authority; (5) conspiracy against the County and the Authority; (6) tortious interference with contract and prospective economic advantage against fictitiously named defendants; and (7) promissory estoppel against the County.

In May and July 2018, the Authority and County separately moved to dismiss H.C.'s complaint. Those motions were primarily focused on the lack of substance of the asserted causes of action. The Authority raised the lack of tort claim notice in its reply brief, and the County did not raise that issue in its initial motion. In orders issued on August 15, 2018 and October 26, 2018, the trial court denied both motions to dismiss without considering the tort claim notice defense.

In October 2018, after H.C. amended its complaint, the Authority again moved to dismiss the complaint. In that second motion, the Authority argued

A-2903-18T4

that H.C. had not filed a timely notice under the TCA. H.C. opposed the motion and cross-moved for an extension to file the tort claim notice.

On January 25, 2019, the trial court heard oral arguments on the Authority's motion and H.C.'s cross-motion. The Court denied H.C.'s cross-motion and granted the Authority's motion dismissing H.C.'s complaint against the Authority with prejudice. The court explained the reasons for its ruling on the record and issued an order that same day.

The trial court determined that H.C.'s tort claims had accrued no later than March 8, 2017, when counsel for H.C. sent counsel for the Authority a letter identifying the claims. The court then found that the tort claim notice sent on June 13, 2017, was sent five days beyond the TCA's ninety-day limit. Finally, the court held that it could not grant an extension for H.C. to file a tort claim notice because H.C. had filed its cross-motion in October 2018, more than one year after the claim accrued on March 8, 2017. As permitted by Rule 2:2-3(a), H.C. filed a notice appealing the January 25, 2019 order dismissing its complaint against the Authority.

In April 2019, the County moved to dismiss H.C.'s tort claims against it. Like the Authority, the County argued that H.C. had failed to file a timely tort

claim notice. H.C. opposed the motion and again cross-moved for an extension of time to file a tort claim notice.

On May 31, 2019, the trial court heard oral argument, denied H.C.'s cross-motion, and granted the County's motion. That day, the court entered an order dismissing with prejudice the conspiracy claim (count five) of H.C.'s complaint and dismissing without prejudice the promissory estoppel claim (count seven) of H.C.'s complaint. The court explained the reasons for its ruling on the record.

Relying on its reasoning on the Authority's motion, the trial court found that H.C.'s tort claims against the County had accrued on March 8, 2017. The court then found that the notice sent on June 13, 2017, was five days late. In addition, the court found that the County had not waived the tort claim notice defense. Finally, the court denied H.C.'s cross-motion for an extension, reasoning that the motion was brought beyond the one-year limitation period.

Because H.C. had previously withdrawn its claim that there was a valid settlement agreement (counts two and three), the only remaining claim against the County was the claim for breach of the lease (count one).[1] H.C. thereafter filed a separate appeal challenging the May 31, 2019 order. Again, H.C. had a

---

[1] The status of count six, which asserts claims against fictitious defendants, is unclear.

A-2903-18T4

right to file that appeal since it was appealing an order denying a motion to extend the time to file a tort claim notice. R. 2:2-3(a)(3). We then granted H.C.'s motion to consolidate the two appeals.

## II.

On appeal, H.C. raises four arguments contending (1) the letters it sent in February and March 2017 substantially complied with the TCA's notice requirement; (2) the notice it sent in June 2017 was timely because the tort claims had not accrued more than ninety days before that notice; (3) the County and Authority waived the tort claim notice defense; and (4) H.C. was entitled to an extension of time to file its tort claim notice. We conclude that the letters sent in February and March 2017 substantially complied with the TCA notice requirements. Accordingly, we reverse and remand on that basis. Given that ruling, we need not address H.C.'s remaining arguments.

## A.

The trial court's interpretation and application of the TCA to undisputed facts is a legal determination that we review de novo. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017); Parsons v. Mullica Twp. Bd. of Ed., 440 N.J. Super. 79, 83 (App. Div. 2015) ("[O]ur review of the meaning of a statute is de novo, and we owe no deference to the interpretative conclusions reached by the

trial court . . . ." (internal quotations omitted)). Moreover, the motions were filed as motions to dismiss H.C.'s tort claims. Because certifications and materials beyond the pleadings were submitted in support of the motions to dismiss, we treat them as motions for summary judgment. R. 4:6-2.

We review summary judgment decisions de novo using the same standard governing the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, shows that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38). If there are no genuine issues of fact, we then decide whether the trial court's ruling on the law was correct. RSI Bank, 234 N.J. at 472 (citations omitted).

### B.

The TCA governs when public entities are liable for a tort. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2007). "As a prerequisite to proceeding with a tort claim against a public entity, plaintiff must file a notice

of claim within ninety days of the accrual of the cause of action." <u>Ibid.</u> (citing N.J.S.A. 59:8-8). The plaintiff may file a late notice of claim within one year of the accrual of claim, provided a court finds there is a showing of extraordinary circumstances and the public entity has not been substantially prejudiced. <u>Ibid.</u> (citing N.J.S.A. 59:8-9); <u>see also</u> <u>O'Donnell v. N.J. Tpk. Auth.</u>, 236 N.J. 335, 345-47 (2019). The failure to file within ninety days, or within one year under extraordinary circumstances, bars the claimant from bringing the tort claim against the public entity. N.J.S.A. 59:8-8(a).

The written notice must include the following information:

> (a) the name and post office address of the claimant;
>
> (b) the post-office address to which the person presenting the claim desires notice to be sent;
>
> (c) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> (d) a general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> (e) the name or names of the public entity, employee or employees causing the injury, damage, or loss, if known; and
>
> (f) the amount claimed as of the date of presentation of the claim, including the estimated amount of any perspective injury, damage, or loss, insofar as it may be

> known at the time of the presentation of the claim, together with the basis of the computation of the amount claimed.

> [N.J.S.A. 59:8-4.]

The notice must be signed, N.J.S.A. 59:8-5, and filed with the public entity, N.J.S.A. 59:8-7. The notice need not be on the public entity's claim form provided that the claimant sets forth the information required by the TCA. Newberry v. Twp. of Pemberton, 319 N.J. Super. 671, 675 (App. Div. 1999). The purpose of the notice is to allow the public entity to review and investigate the claim, afford it the opportunity to settle the claim, allow it to correct the conditions or practices that gave rise to the claim, and give it advance notice of its potential liability. Velez v. City of Jersey City, 180 N.J. 284, 290 (2004); Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000).

In determining whether a writing constitutes sufficient notice under the TCA, the doctrine of substantial compliance has been recognized. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 159 (2013); Lebron v. Sanchez, 407 N.J. Super. 214, 216 (App. Div. 2009); Guerrero v. City of Newark, 216 N.J. Super. 66, 72 (App. Div. 1987). "[S]ubstantial complaince means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required." Lebron, 407

N.J. Super. at 216 (quoting Lameiro v. West N.Y. Bd. of Educ., 136 N.J. Super. 585, 588 (Law Div. 1975)).  It is an equitable doctrine used "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose."  Cty. of Hudson v. State Dept. of Corr., 208 N.J. 1, 21 (2011) (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352 (2001)).

Accordingly, the doctrine operates "to prevent barring legitimate claims due to technical defects."  Ibid. (quoting Lebron, 407 N.J. Super. at 215).  "In general, it rests on a demonstration that a party took 'a series of steps . . . to comply with the statute involved,' and those steps achieved the statute's purpose, as for example, providing notice."  Id. at 22 (quoting Galik, 167 N.J. at 353-54).  "Even so, the doctrine can only apply if there is no prejudice to the other party and if there is a reasonable explanation why there was not strict compliance with the statute."  Ibid. (citation omitted).

Applying these legal principles, we conclude that the three letters sent in February and March 2017 substantially complied with the notice requirements of the TCA.  The letters were sent by H.C.'s lawyers to lawyers representing the County and the Authority.  Accordingly, those letters identified the claimant –

14

H.C.; where notices to H.C. were to be sent – to H.C.'s counsel; and the public entities causing the alleged injuries – the County and the Authority.

The letters also described H.C.'s tort claims. The letters stated that the Draft Report contained inaccurate information and contended that those inaccuracies were injurious to H.C. The letters also complained that the County and the Authority, together with others, were working against H.C. to undermine the alleged settlement and cause H.C. damages. Accordingly, the attorneys representing the County and the Authority were given sufficient notice of claims of trade libel and conspiracy. In that regard, the letter dated February 22, 2017, stated: "H.C. Equities will likely proceed with its original claims in the Superior Court, prosecute additional causes of action against the appropriate parties including, but not limited to, tortious interference with the settlement, tortious interference with contract and tortious interference with prospective economic advantage." In similar vein, the letter dated March 9, 2017, stated that the lawyer for H.C. had been retained to "pursue all available remedies" and that H.C. "will shortly be filing a civil action" against the County and others.

The letters also provided sufficient notice of the amount of H.C.'s claim. The letter dated March 8, 2017, referred to H.C.'s original claims in the First Suit as involving millions of dollars. The letters of February 22, 2017 and March

15

9, 2017 made clear that if a settlement was not reached, those claims, plus additional tort claims, would be filed.

The letters also should be read in context. H.C. and the County had previously been involved in the First Suit. Accordingly, when the letters were sent in February and March 2017 to lawyers representing the County and the Authority, the County and the Authority were on notice that H.C. would pursue its legal claims. The lawyers for the County and the Authority also clearly had the ability to communicate with the attorneys for H.C. to clarify any questions they may have had concerning the intent of the letters. Thus, there is no prejudice to the County or the Authority.

Just as importantly, the purposes of the TCA notice requirement were satisfied. The County and the Authority had the opportunity to settle with H.C. if they chose. The County and the Authority also had the opportunity to investigate the facts and prepare a defense against H.C.'s claims. Similarly, they had a chance to correct the practice giving rise to the claims; that is, H.C. was demanding the removal of the alleged inaccuracies in the Draft Report and the completion of the settlement. Finally, the County and the Authority knew in advance of a lawsuit that they faced claims for millions of dollars in alleged damages. See Velez, 180 N.J. at 290; Beauchamp, 164 N.J. at 121-22.

A-2903-18T4

Accordingly, we reverse the trial court's orders dated January 25, 2019 and May 31, 2019. We remand with direction that the claims dismissed in those orders be reinstated. In remanding, we express no view on the ultimate validity of H.C.'s tort claims. In that regard, we note that this dispute primarily arises out of a landlord-tenant arrangement based on a lease.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2903-18T4