**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3138
_____

RA-KING ALLEN,
Appellant

v.

NEW JERSEY STATE POLICE; SUPERINTENDENT
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC
SAFETY – DIVISION OF STATE POLICE, JOSEPH R.
FUENTES; TROOPER RICHARD NUGNES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Action No. 3-16-cv-01660)
District Judge: Hon. Brian R. Martinotti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL,
*Circuit Judges*.

(Opinion Filed: September 9, 2020)

Stacey A. Van Malden
Goldberger & Dubin
401 Broadway
Suite 306
New York, NY 10013
 *Counsel for Appellant*

Nicole E. Adams
Tasha M. Bradt
Matthew J. Lynch
Office of the Attorney General of New Jersey
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
 *Counsel for Appellees*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

This case concerns Plaintiff-Appellant Ra-King Allen's attempt to sue for malicious prosecution after the State of New Jersey declined to retry him for possession with intent to distribute heroin. We must decide whether the District Court erred in granting summary judgment on the malicious prosecution claim because: (1) Ra-King Allen's underlying prosecution for possession with intent to distribute heroin did

not terminate in his favor; and (2) the State of New Jersey has not waived its Eleventh Amendment immunity. For the reasons stated below, we will affirm.

## I. BACKGROUND

This case resulted from a vehicle stop and arrest that took place in 2008. On April 21, 2008, New Jersey State Police Trooper M. DiLillo stopped a rented Chevy Malibu for speeding on Route 80 West in New Jersey. Plaintiff-Appellant Ra-King Allen was the only passenger. His uncle, Andrew Allen, was the driver.

When DiLillo approached the vehicle, Andrew Allen informed him that his nephew, Ra-King, had rented the vehicle and that they were traveling from New York City to Binghamton, New York. DiLillo performed a record check and discovered that Andrew Allen had an outstanding warrant. He placed Andrew Allen under arrest and, after conducting a search of his person, placed him in the rear of his police vehicle. DiLillo then asked Ra-King Allen for his license. He discovered that Ra-King Allen too had an outstanding warrant for failure to appear. DiLillo then placed him under arrest. During DiLillo's search incident to the arrest, Ra-King Allen admitted that he had marijuana on his person. DiLillo discovered two small baggies of marijuana in Ra-King Allen's shoe.

DiLillo had radioed for assistance with the stop. Defendant-Appellee Trooper Richard Nugnes ("Nugnes") went to the scene. When Nugnes arrived, DiLillo had already put both Andrew and Ra-King Allen into custody. At that point, DiLillo left the scene with the two men. Nugnes remained to wait for a tow truck to remove the impounded Chevy Malibu.

3

When the tow truck arrived, the driver attempted to unlock the car. In the course of doing so, he accidentally opened the trunk. At that point, Nugnes turned and looked at the trunk. He told the tow truck driver not to do anything. Nugnes pulled out a "thing wrapped up in a black plastic bag." JA63. Based on his training and experience, Nugnes believed that it was a bundle of heroin. He radioed in to inform the police station that he had found narcotics and then searched the rest of the trunk. The plastic bag did contain heroin.

Ra-King Allen (hereinafter referred to as "Allen") was charged with: (1) manufacturing, distributing, or dispensing heroin; (2) possession, use or being under the influence, or failure to make lawful disposition of a controlled dangerous substance; (3) possession of under 50 grams of marijuana; and (4) possession of narcotic paraphernalia. Allen moved to suppress the heroin, but the trial court denied the motion on the ground that the evidence was in plain view. Allen then pled guilty to possession with intent to distribute heroin and possession of marijuana. With respect to the heroin charge, Allen admitted on the record that: "I had in my car on April 21st, there was heroin in the trunk of my car, and I had knowledge of it." JA120. When questioned by the judge, Allen affirmed that he knew the drug was heroin and that he intended to distribute it. Allen was sentenced to fourteen years' imprisonment with 57 months of parole ineligibility.

The Appellate Division affirmed the denial of the motion to suppress. The Supreme Court of New Jersey, however, remanded to the trial court for additional fact-finding. On remand, the trial court heard testimony from the tow truck driver and Nugnes. Based on that testimony, the trial court was "not persuaded, by even the preponderance of the evidence, that the mannitol or the heroin was visible prior to the trooper's

4

incursion into the trunk." JA142. Having retained jurisdiction, the Supreme Court of New Jersey then reversed and vacated Allen's conviction on the heroin charge on the ground that "[n]either the automobile exception nor the plain view exception" applied to justify Nugnes's warrantless search of the vehicle. JA136.

The State moved to dismiss the indictment because it would be "unable to proceed to trial" as a result of "th[e] Order [vacating Allen's conviction] and the suppression of the evidence which corresponds" to the indictment. JA21. The trial court granted the State's motion.

Allen then filed a 42 U.S.C. § 1983 suit against Defendants-Appellees the New Jersey State Police (the "NJSP"), Joseph R. Fuentes, the Superintendent of the New Jersey Department of Law and Public Safety-Division of State Police ("Fuentes"), and Nugnes (collectively, hereinafter "Defendants"). The District Court dismissed his first Complaint. Ultimately, Allen's operative Second Amended Complaint alleged that (1) Defendants committed malicious prosecution in violation of § 1983 and New Jersey common law and (2) Defendants Fuentes and the NJSP violated his constitutional rights under § 1983 by adopting and implementing careless and reckless policies and failing to adequately train and supervise Nugnes.[1] Defendants filed a new motion to dismiss, which the District Court denied. Defendants

---

[1] Allen has made no reference to this claim in his briefing on appeal. We therefore will not reach this claim, as it is waived. *See, e.g.*, *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

then filed a motion for summary judgment, which the District Court granted.

This timely appeal followed.

## II.      JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Allen's § 1983 suit under 28 U.S.C. § 1331.  We have jurisdiction over Allen's appeal under 28 U.S.C. § 1291.  We conduct a plenary review of the grant of summary judgment. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  Summary judgment should only be granted where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We draw all reasonable inferences in the nonmovant's favor. *Goldenstein*, 815 F.3d at 146.

## III.      DISCUSSION

At issue on appeal is whether the District Court erred in granting summary judgment to Defendants on Allen's malicious prosecution claim.   The District Court granted summary judgment for two reasons: (1) the termination of Allen's criminal case did not indicate that he was innocent of the crime charged; and (2) New Jersey has not waived its Eleventh Amendment immunity from suit for damages in federal court.  Allen argues that the District Court erred on both counts.  We disagree.

 A.      *Allen's Prosecution Did Not Terminate in His Favor*

To prove a malicious prosecution claim under § 1983, a plaintiff must show that:

6

(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). At issue in this case is the second requirement, the favorable termination element. New Jersey common law likewise requires the plaintiff to show that the underlying criminal action "was terminated favorably to the plaintiff." *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975).

The favorable termination element is only satisfied if the criminal case was "disposed of in a way that indicates the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). "The purpose of the favorable termination requirement is to avoid 'the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id.* (alteration omitted) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Depending on the facts, a plaintiff may be able to satisfy the favorable termination if he shows that his criminal proceeding was terminated by:

(a) a discharge by a magistrate at a preliminary hearing, or

7

> (b) the refusal of a grand jury to indict, or
>
> (c) the formal abandonment of the proceedings by the public prosecutor, or
>
> (d) the quashing of an indictment or information, or
>
> (e) an acquittal, or
>
> (f) a final order in favor of the accused by a trial or appellate court.

*Id.* (citation omitted).

Allen submits that he has satisfied the favorable termination element because the State formally abandoned his prosecution. Although in some cases a prosecutor's decision to abandon the criminal case may indicate the innocence of the accused, and thereby satisfies the favorable termination requirement, this analysis depends on the particular facts. As we held in *Donahue v. Gavin*, 280 F.3d 371 (3d Cir. 2002), "not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *Id.* at 383. Abandonment of the criminal case is a favorable termination "only when [the case's] final disposition is such as to indicate the innocence of the accused." *Id.* (emphasis omitted). For that reason, in *Donahue*, we held that a prosecutor's decision not to retry a defendant in the interest of judicial economy, and not because of any doubt about the strength of the evidence against him, was not a favorable termination. *Id.* at 384.

Although we have not considered whether a prosecutor's decision to abandon further prosecution due to suppression of otherwise reliable evidence is a favorable

8

termination, our sister circuits have done so.  We agree with their reasoning:

> [I]f the circumstances show that unreliable evidence has been suppressed and the prosecution then abandons the case because of lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence.  But if the evidence was only suppressed on "technical" grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence.

*Wilkins v. DeReyes*, 528 F.3d 790, 804 (10th Cir. 2008) (citation and internal quotation marks omitted); *see also Margheim v. Buljko*, 855 F.3d 1077, 1089 (10th Cir. 2017); *Mills v. City of Covina*, 921 F.3d 1161, 1171 (9th Cir. 2019) (holding that dismissal of a criminal case because evidence was suppressed under the exclusionary rule is not a favorable termination for malicious prosecution).

The question is thus whether the evidence was suppressed because it was unreliable or whether it was suppressed based on other grounds that do not cast doubt on the trustworthiness of the evidence.  We must therefore "look to the stated reasons for the dismissal [of the criminal proceedings] as well as the circumstances surrounding it in an attempt to determine whether the dismissal indicates [the plaintiff's] innocence."  *M.G. v. Young*, 826 F.3d 1259, 1263 (10th Cir. 2016) (first alteration in original) (quoting *Wilkins*, 528 F.3d at 803).

Here, the Supreme Court of New Jersey vacated Allen's conviction because Nugnes's search of the vehicle's trunk was not permitted under any exception to the warrant requirement. In other words, the search was conducted and the inculpatory evidence was discovered in violation of the Fourth Amendment. Neither the trial court nor the Supreme Court cast any doubt at any point on the reliability of the heroin discovered during the search or its relevance to the charges for which Allen was convicted; the issue was solely whether the search itself was constitutionally permitted. The evidence was thus ultimately suppressed for reasons "having no or little relation to the evidence's trustworthiness," *Wilkins*, 528 F.3d at 804, and Allen has not shown otherwise.

Allen's claim that the termination of his criminal case was indicative of his innocence because he was arrested without probable cause is unavailing. This argument conflates the second and third elements of the requirements for a malicious prosecution claim. To prove a malicious prosecution claim, Allen must show *both* that the criminal proceeding ended in his favor *and* that the defendant initiated the proceeding without probable cause. *See Johnson*, 477 F.3d at 81–82. Allen's ultimate success in his suppression motion may bear on the probable cause element. However, since the suppression did not cast any doubt on the reliability of the evidence, it does not indicate his innocence.

The State has not suggested that it decided not to retry Allen because he was innocent. To the contrary, Allen admitted under oath that he was guilty of possession with intent to distribute heroin. Specifically, he stated: "I had in my car on April 21st, there was heroin in the trunk of my car, and I had knowledge of it." JA 120. Allen never claimed innocence in his criminal proceeding or sought to withdraw his plea. *See*

10

*State v. Taccetta*, 975 A.2d 928, 935 (N.J. 2009) ("The notion that a defendant can enter a plea of guilty, while maintaining his innocence, is foreign to our state jurisprudence. Court-sanctioned perjury is not a permissible basis for the entry of a plea in this State.") (internal footnote omitted).

In the context of this lawsuit, Allen now claims that he was innocent. During his deposition, Allen testified that he did not know that heroin was in the trunk of the vehicle. But in light of his previous, in-court, sworn admission of his guilt, no rational juror could have credited this new assertion of innocence. "[I]f the nonmoving party's evidence, when viewed in the context of all of the evidence, could not be credited by a rational juror, summary judgment may be granted." *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993). The District Court therefore did not err in granting summary judgment on the ground that Allen failed to meet the requirements of a malicious prosecution claim because he failed to show that his criminal case was terminated in a way indicative of his innocence.

B.      *New Jersey Has Not Waived its Eleventh Amendment Immunity*

The District Court also granted summary judgment to Defendants NJSP and Superintendent Fuentes on the ground that New Jersey has not waived its Eleventh Amendment immunity from suit. We agree.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The

11

Eleventh Amendment "bar[s] all private suits against non-consenting States in federal court," *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008), with the goal of protecting "the States' solvency and dignity," *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 52 (1994); *see also Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) ("[The Eleventh Amendment] has evolved into a potent tool for States to ensure that States retain their sovereignty and integrity as constituent polities of our national government."). The Amendment "has been interpreted by the Supreme Court to shield States and certain State-affiliated entities from suits for damages in federal court." *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018). There is no exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (recognizing that Eleventh Amendment immunity applies to state law claims in addition to federal claims).

A state may waive its Eleventh Amendment immunity, thereby permitting suit against it in federal court. To do so, "[t]he state either must voluntarily invoke our jurisdiction by bringing suit . . . or must make a clear declaration that it intends to submit itself to our jurisdiction." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 504 (3d Cir. 2001) (internal quotation marks omitted). Waiver of Eleventh Amendment immunity will be found "only where the state's consent is stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 345 (3d Cir. 2003) (alteration in original) (internal quotation marks omitted).

New Jersey has not done so. *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 819 F.2d 413, 418 (3d Cir. 1987), *abrogated on other grounds by Hess*, 513 U.S. 30. Allen claims that the State waived its immunity under the New Jersey Tort Claims Act "in cases in which a public official has engaged in a crime, actual fraud, actual malice or willful misconduct" and "for public entities, when an injury is proximately caused by an 'act or omission of a public employee within the scope of his employment.'" Appellant Br. 26 (quoting N.J. Stat. Ann. § 59:2-2). However, the New Jersey Tort Claims Act does not constitute waiver of immunity from suit in federal court; the statute reflects a limited waiver only of the State's immunity from suit in *state* court. *See Velez v. City of Jersey City*, 850 A.2d 1238, 1241–42 (N.J. 2004). "[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 n.9. Allen has not pointed to any section of the New Jersey Tort Claims Act, or any other statute, in which New Jersey has made a "clear declaration" that it consents to the jurisdiction of the federal courts for suits seeking damages. *MCI*, 271 F.3d at 504.

The only remaining question is thus whether the NJSP and its Superintendent, Fuentes, are entitled to Eleventh Amendment immunity as "arm[s] of the State." *Bradley*, 880 F.3d at 654. We answer in the affirmative. To determine whether a state-affiliated entity is entitled to Eleventh Amendment immunity, we apply a three part test, also referred to as the "*Fitchik* factors": "(1) whether the money that would pay any judgment would come from the state; (2) the status of the agency under state law; and (3) the degree of autonomy possessed by the agency." *Id.* at 654–55 (citing *Fitchik v. N.J.*

13

*Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989) (en banc)).

Appropriately, Allen does not dispute that the NJSP is a state agency entitled to immunity. The NJSP is a division of New Jersey's Department of Law and Public Safety, which is an executive department. N.J. Stat. Ann. §§ 52:17B-1; 52:17B-3. It is organized under the authority of the State's Attorney General. *Id.* § 52:17B-3. The Superintendent of the NJSP is appointed by the Governor with the advice and consent of the Senate and serves during the term of the Governor who appointed him or her. *Id.* § 53:1-2. The purpose of the Department is "to provide for the enforcement of the criminal law of the State" and to render "legal services to the Governor and to all officers, departments, boards, bodies, commissions and instrumentalities of the State Government." *Id.* § 52:17A-1. These are indisputably government services. Further, the NJSP is funded by appropriations made from the New Jersey State Treasury. *See* Anticipated Resources for the Fiscal Year 2019-2020, P.L.2019, Ch. 150, approved June 30, 2019, Senate, No. 2020, https://www.njleg.state.nj.us/2018/Bills/AL19/150_.PDF. Payment of a judgment against the NJSP arising out of tort comes from the State Treasury under New Jersey Statutes Annotated § 59:12-1. The NJSP is thus deeply integrated into the government and governmental functions of New Jersey. As such, it is a state agency entitled to Eleventh Amendment immunity. *See, e.g.*, *Longoria v. New Jersey*, 168 F. Supp. 2d 308, 315–16 (D.N.J. 2008) (deciding that the NJSP "is plainly an arm of the State of New Jersey" based on the *Fitchik* factors).

The same conclusion applies to Allen's suit against Fuentes in his official capacity as Superintendent of the NJSP.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  We will therefore affirm the District Court's dismissal of Allen's claims against the NJSP and Fuentes based on New Jersey's Eleventh Amendment immunity.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm.